29 P.(2d) 334

**GALLEGOS et al. v. CONROY et al.**

No. 3844.

Supreme Court of New Mexico.

Jan. 22, 1934.

Frank H. Patton, Asst. Atty. Gen., for appellants.

Fred Nicholas, of Los Lunas, and F. C. H. Livingston, of Belen, for appellees.

ZINN, Justice.

From a decree enjoining the state highway commission, its engineers and R. S. Conroy, from constructing a road to be used for highway purposes on a right of way donated for that purpose to the state by defendant Conroy, this appeal is prosecuted. The defendants, with the exception of defendant. Conroy, demurred to the complaint, which was overruled, and, defendants electing to stand on the demurrer, the decree was entered. Defendants rely upon one ground for reversal. The plaintiffs raise some additional points to sustain the decree, on the theory that all facts, properly pleaded, are admitted by the demurrer to be true.

The plaintiffs are Jesus Gallegos, a taxpayer and property owner of Valencia county, the village of Los Lunas, and the board of county commissioners of Valencia county. For convenience, the plaintiffs and defendants will be referred to in this opinion as they were in the district court.

The complaint recites that some time prior to the institution of this proceeding the state of New Mexico, with the aid of the United States, and in co-operation with the board of county commissioners of Valencia county, constructed what is known as federal aid project No. 125-A and federal aid project No. 150. These projects are located partly within Valencia county, and the title to the right of way for that portion of each of said projects located in Valencia county is vested in the county. These two projects intersect at right angles within the corporate limits of Los Lunas. Project No. 150 is part of the main highway from Los Lunas to Gallup, N. M., and project No. 125-A is the project from Los Lunas to Ysleta, N. M.

The road attempted to be constructed is termed in the complaint as a Y, and was intended to join and contact project No. 125-A at a point about one-half mile north of its intersection with project No. 150, and join and contact project No. 150 at a point about one-half mile west of its intersection with project No. 125-A, apparently eliminating the right angle intersection within the corporate limits of Los Lunas.

The complaint recites that the Y is being constructed at the expense of the state of New Mexico unnecessarily, and its use will result in great danger and injury to the property and business of plaintiff Jesus Gallegos, who is a taxpayer, and that the operation of the Y will lead to confusion of traffic and danger to vehicles and life, and is being constructed at the instance and request of defendant R. S. Conroy to gain for Conroy, at the expense of the state, advantages over his competitors in business, and for no other purpose, and that the defendants are therefore acting in bad faith.

As to plaintiff Gallegos' claim that he will be damaged if such Y is constructed, he pleads no facts indicating the manner in which he will be damaged or the nature of such damages, and such general allegation

is a mere conclusion of the pleader. It does not appear from the complaint that there is any direct taking of plaintiff Gallegos' property, and, if the damage be consequential, he cannot seek relief by injunction. We said in the case of Summerford v. Board of Com'rs, 35 N. M. 374, 298 P. 410, 413: "It is not possible to anticipate what consequential damages may be asserted. So, it is the rule that the improvement will be allowed to proceed and the liability for consequential damages will be determined afterward. Otherwise, injunctions would intolerably delay public work and responsible officials, from fear of personal liability, would refuse to proceed."

Plaintiffs complain of the fact that the Y is being constructed at the expense of the state of New Mexico. In the completion of our main trunk highways, such expenditure is lawful. 1929 Comp. St. § 64-331. The need or requirement for the construction of the Y is a matter to be determined by the highway commission and not by the courts, and the courts cannot assume the control and management of our state highway system.

The allegation in the complaint that said construction will needlessly render unsafe a part of said highway and impair its usefulness and divert its use are too general to be binding in any way upon the demurrants. Town of Farmington v. Mumma, 35 N. M. 114, 291 P. 290. We cannot charge the highway commission with bad faith on such general allegations.

We can readily dismiss the plaintiffs' charge on information and belief that said Y is being constructed to serve the individual interests of Conroy to gain for him advantages over his competitors in business, because it is a reasonable inference from the facts pleaded that the Y will eliminate a right-angle turn at the point of divergence between highway 66 and 85 at Los Lunas.

Merely because Conroy gratuitously gave to the state a right of way does not negative the public necessity thereof. This highway is to be a public highway, free and open to all citizens, and because it will be of especial benefit to one does not condemn its purpose. Heninger. v. Peery, 102 Va. 896, 47 S. E. 1013.

It is a fact which does not admit of contradiction, though not disclosed by the record, and of which we take judicial notice as we would of the fact that the village of Los Lunas is located on the Albuquerque-El Paso branch line of the Santa Fé Railroad, that "Federal Aid Project 150" and "Federal Aid Project No. 125–A" are merely the numbers designating the immediate road projects in a larger trunk line system, and that two main trunk lines, to wit, Highway 66, a main federal aid highway running in an easterly and westerly direction, not only through New Mexico, but through adjacent states, and Highway 85, a main federal aid highway running in a northerly and southerly direction, generally following the course of the Camino Real, 1929 Comp. St. § 64-1601, not only through the state of New Mexico, but through adjacent states, converge at a point near Las Vegas, N. M., and run together as one main highway until they come to the village of Los Lunas, one of the plaintiffs herein, where they diverge. Highway

85 continues south with its flow of traffic into El Paso, Tex., and Highway 66 turns west with its flow of traffic through Arizona and California.

That Conroy may derive some advantage from the construction cannot, standing alone, condemn it. The record does not disclose what business defendant Conroy happens to be in or what advantage he may have over his competitors, and we cannot impute base motives to the highway commission on such general statements. We must place the highway commission's determination of necessity for the construction of the Y on a broader and larger plane than the desires of an individual, and infer that the commission's motive is for the service of the state and the traveling public, even though some individual may better his position thereby. We must judge by the act and not a general allegation of motive.

█ Plaintiffs contend that the attempted establishment and laying out of the Y is in violation of article 4, § 24, of the N. M. Const. This section of our Constitution prohibits the Legislature from enacting local or special laws in the laying out, opening, altering, or working roads or highways, except as to state roads extending into more than one county. It is apparent from the related facts and the inferred purpose of the proposed construction that the Y will become a part and parcel of Highway 66, a main trunk line highway traversing the entire state, and is a road extending into more than one county. N. M. Const. art. 4, § 24, in no manner prohibits such proposed construction.

We come now to the real issues, unobscured by irrelevant and immaterial underbrush issues. In the construction of project No. 125–A there was a co-operative arrangement between the state highway commission and the board of county commissioners of Valencia county, pursuant to the provisions of 1929 Comp. St. § 64-601, by which arrangement the board of county commissioners acquired the right of way at the expense of the county and the title to the same is now in the county of Valencia. Title to the right of way for the Y is in the state. The Y, in order to connect up with the two federal aid projects, already constructed, will pass into, through, and upon rights of way, the title to which is vested in the county of Valencia.

█ It is contended by the county commissioners in substance that the state highway commission cannot acquire a right of way or lay out and establish a state highway in a county without the consent of the board of county commissioners.

In the year 1909 the Legislature, by chapter 42 of the Laws of that Session, created a Territorial Roads Commission. This commission was given general charge and supervision of all highways and bridges in the territory which are constructed or maintained in whole or in part by the aid of territorial moneys. It was intrusted with the duty of constructing, repairing and maintaining, at the expense of the territory, either wholly or in part, such public roads and highways in the interest of the general public, looking to the construction and maintenance of a complete system of highways in the territory. The commission was directed to de-

termine what roads shall be constructed or repaired, and was admonished to co-operate with the various boards of county commissioners of the different counties of the territory in the construction of such roads and highways. 1929 Comp. St. § 64-334.

This act of 1909 was largely amended by chapter 54, Laws 1912. In addition to the powers and duties prescribed by the act of 1909, the commission was given larger powers. The act of 1912 provided that the state highway commission shall make rules and regulations governing the method of construction, improvement, and maintenance of such highways and bridges as may receive aid from the state, and to select, lay out, and construct a system of prospective state highways.

In 1917 chapter 38 was adopted. This act gave to the state highway commission exclusive control over any and all road or roads comprised in the system of state roads. 1929 Comp. St. c. 64, art. 3 (section 64-301 et seq.).

In 1927 by chapter 39 (Comp. St. 1929, § 64-313), it was provided that rights of way deemed necessary by the state highway commission for highways constructed under the supervision of said commission shall be acquired by the county by donation by the owners of the lands through which such highways shall pass, or by agreement between such owners and the board of county commissioners of the county, or through the exercise of the power of eminent domain in the manner provided by law for acquiring property for public use.

It is upon the provisions of section 64-401 and section 64-334 that the board of county commissioners plants its claim to have the right of way to the Y vested in it, and contends that the highway commission has no power to acquire title to any right of way, and that the highway commission violated its co-operative agreement.

Without having before us the co-operative agreement respecting project No. 125–A which was entered into between the state highway commission and Valencia county, and which the plaintiffs contend was violated, we are unable to determine any breach of contract.

Laws 1929, c. 110, now 1929 Comp. St. § 64-303, specifically confers upon the highway commission the power of eminent domain to be exercised by it for the condemnation of rights of way for highways. This would be a sterile grant of power to the highway commission if it were to be exercised only at the direction of the board of county commissioners. The apparent purpose of this grant of power to the highway commission was to enable the highway commission to proceed alone when the county refused to acquire a right of way. If it had been the legislative intent that only the county could acquire the right of way, section 64-303 would be merely an idle gesture. Counties and municipalities had the power of eminent domain for roads, streets, and alleys, prior to the enactment of the 1929 law. See Code 1915, § 2112. The highway commission has the power to acquire a right of way for state highway purposes without the consent of the board of county commissioners.

The question presented and urged by the village of Los Lunas is this: Has the state highway commission the power to come within the corporate limits of the village and therein lay out a prospective state highway on property other than existing streets and alleys?

The territory of New Mexico, in 1864, chapter 39, enacted legislation relative to the organization of cities and towns, and in section 14, subdiv. 7, which is now 1929 Comp. St. § 90-402 (7), provided that the city counsel and board of trustees in towns shall have power to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks. In 1929 the Legislature enacted chapter 35 (Comp. St. 1929, § 90-3415), which extends to towns and villages of less than 1,200 the identical powers theretofore possessed by cities.

It is within these provisions of law that the village of Los Lunas claims to have absolute control over existing streets as well as proposed roads through the municipality, to the exclusion of the state highway commission. As to the municipality's power to lay out its own streets and alleys, it is apparently supreme.

The answer to the two fundamental issues presented by the county and village is best to be had by a review of the legislation respecting control of the highways and roads of our territory and state.

Prior to 1882, the administration of road matters was left to the probate judges and justices of the peace. See Rev. St. and Laws 1865, art. 56, p. 642. Travel and road conditions did not require any broader control.

In 1882 the Territorial Legislature provided that the boards of county commissioners of each county in this territory should establish, lay out, fix, and maintain public roads in their respective counties and public streets in any town or city in their respective counties (Sess. Laws 1882, ch. 44). This was in keeping with the horse and buggy age.

By chapter 83, Laws 1884, the boards of county commissioners in the several counties of the territory were given general supervision over the highways in their county, with power to establish, change, or discontinue them. Comp. Laws 1884, § 1284.

In 1891 chapter 89 was adopted. This act again vested in the board of county commissioners in the respective counties of the territory the control and management of the roads and highways in the counties with power to establish, change, and maintain the same in the manner prescribed by the act.

Those were the days when every man in the precinct was required, either personally or by substitute, and with his teams, axes, hoes, picks, and spades, to assist in maintaining the roads. See Laws 1901, ch. 40, § 12. The one-man tractor maintainer was unknown.

In 1905 (Laws 1905, c. 124) all roads and highways, except private roads, either established or dedicated to public use, were declared to be public highways. The power still remained in the board of county commissioners, though the width of roads was

extended from forty to sixty feet. A few automobiles were beginning to appear on the roads.

In 1907 (Laws 1907, c. 53) the county commissioners were supreme in their control over roads and highways, though the method of supervision was changed from the original precinct supervision to district supervisors.

Beginning with the year of 1909, when the territorial highway commission was created, down to the present day, which legislation we have already reviewed, the trend and apparent policy of the Legislature has been to centralize and vest more and greater powers in the state highway commission in matters respecting main trunk state highways.

Legislation was keeping pace with the growth of faster travel and the need · for larger and more centralized control over highways.

In a civilization, if we please to call it such, rapidly expanding and growing, where the man who lives in Albuquerque, at an approximate distance of sixty miles from Santa Fé, is as close in point of time to us as was the man who lived but sixty blocks from us thirty years ago, when through the use of the automobile, bus, truck, and other means of mechanically propelled and fast vehicular locomotion municipalities which were formerly two and three days apart, if distance be measured by the time necessarily required to travel the same, are now but a few hours apart, and millions of American citizens daily or annually with their families and friends travel over well-constructed highways from state to state or city to city, as they traveled and visited their neighbors who lived but a few blocks distant many years ago, the narrow construction contended for by the plaintiffs cannot be indulged. The welfare of the state and the purpose for which the powers were granted must be given primary consideration in the construction of the various statutes relating to the powers of each.

In determining the question thus presented by the state, the circumstances surrounding the enactment of the legislation in question should be considered:

"The rule announced in Kent's Commentaries, § 462, for the interpretation of statutes, and generally followed by the courts, is as follows: 'When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion.'" State ex rel. Lorenzino v. County Commissioners of McKinley County, 20 N. M. 67, 145 P. 1083, 1084, L. R. A. 1915C, 898.

Plaintiffs admit that the state highway commission has power to construct, repair, and maintain such public roads and highways within this state as in their judgment will best serve the interests of the general public, looking to the construction and maintenance of a complete system of highways in this state, and admit that the words "state highway" shall include any highway declared to be a state highway by an act of the Legislature or designated as such by the state

highway engineer, as provided in section 64-1901, Comp. St. 1929, and admit that, once a state highway is properly established, the state highway commission has absolute jurisdiction as to the construction and maintenance thereof, even where it passes through an incorporated municipality, and admit that the Legislature is supreme in such matters. They contend, however, that there is a great difference between the construction, repair, and maintenance of a state highway on the one hand and the original establishment and laying out of a highway on the other hand. They claim that, while the law gives the right, and in fact imposes a duty upon the state highway commission, to construct, repair, and maintain a highway, they nevertheless contend that the highway commission has no authority to establish or lay out one.

Plaintiffs urge that, as to the state highways passing through a county outside of an incorporated municipality, the law requires that the establishment shall be in cooperation with the board of county commissioners of the county, and that, because the Legislature granted to municipal corporations the power to not only govern themselves, but to lay out and plan their cities and villages in accordance with their own desires, the Legislature never intended that a highway commission should be given authority to locate a highway through a municipality in such manner as to upset its entire municipal plan of streets and alleys.

In construing the various acts of the Legislature respecting the apparent conflict of powers between the highway commission and the board of county commissioners on the one hand as to who shall control the roads and highways within the counties, and between the highway commission and village trustees as to the course a state highway shall take within the municipal limits, we must take into consideration the purpose and circumstances under which each law was passed, and the practical operation and effect of such statutory construction, in an attempt to harmonize the various provisions if there is any conflict.

In Elliott on Roads and Streets, vol. 1 (4th Ed.) p. 607, it is said: "Townships and counties generally have control of their own roads and cities are usually given control of their own streets, yet laws are frequently enacted which, if taken literally, would permit the one to invade the jurisdiction of the other, and it is very difficult in such cases to determine just when that jurisdiction is intended by the legislature to be exclusive. The courts seem, however, to have favored that construction of the statutes which leaves to each jurisdiction the exclusive control of its own highways, and thus prevents a conflict of authority."

And on page 574 of this work we find the following: "Power over roads and streets resides in the legislature, and, except in so far as restricted by constitutional provisions, the legislative power is practically unlimited. That the local governmental instrumentalities derive their authority from legislative enactments has often been affirmed, and there is no diversity of opinion upon the question."

Though the Legislature may have delegated to the cities, towns, and villages ex-

clusive authority over their streets and alleys, the Legislature may resume such delegated authority in whole or in part, and may vest such authority in some other body.

The paramount purpose of the creation of the highway commission was to subserve the public interest, looking to the construction and maintenance of a complete system of highways in the state. 1929 Comp. St. § 64-331, Laws 1909, ch. 42, § 4.

The admonition of the Legislature of 1909, chapter 42, § 6, 1929 Comp. St. § 64-334, to co-operate with the counties in carrying out the purposes of the act, does not vest the county commissioners with power to regulate the geographic or topographic course which highways must follow, nor does it give boards of county commissioners veto powers over the acts of the highway commission to enable such county commissioners to nullify the entire purpose of a unified system of highways.

We can find no such implied power in the provision that requires counties to furnish the right of way. Such provision merely places a burden upon the counties which the Legislature has a right to do. That the Legislature would have the power to establish a state road, and tax the cost and expense thereof upon the county, without the approval of the people of the county, is not questioned. State v. Board of Commissioners, 28 Kan. 431. An imposition of such burden would not necessarily give the county control over the location of the highway. If the state can put the whole cost of public roads upon the county, it can put upon the county the cost of rights of way for them.

These governmental bodies, municipalities and counties, as well as the highway commission, are creatures of the state, and from the state they derived their powers. The Legislature intrusted to the highway commission all matters pertaining to the expenditure of the state road fund in the construction, improvement, and maintenance of public roads and bridges in the state, and such highway commission was given power to do all things necessary and expedient in the exercise of such supervision. 1929 Comp. St. § 64-326; Laws 1912, c. 54, § 2.

The general policy of all legislation from the time of the creation of the original territorial highway commission to the present day is to centralize control of the state highways in the highway commission, while leaving the control of purely local county roads with the county board of commissioners.

As to the village of Los Lunas, the question may appear at first glance deeper. Yet the principles are the same.

If the highway commission has the power to designate, lay out, construct, and maintain state highways outside of a municipality, wherein is it prohibited from doing so within a municipality?

Surely not within the provisions of 1929 Comp. St. § 90-402 (7). This gives the municipality control over its own streets and alleys. The highway commission could not take such control away from the municipalities unless the Legislature clearly said so.

We do not hold that the state highway commission can ruthlessly disregard any municipal plan or program relative to a municipal

design relating to its streets and alleys, nor do we decide the question of whether the Y becomes a street or alley of the village of Los Lunas. That question is not before us.

The Y is a link in the main state highway system, eliminating a right-angle curve, shortening the distance which any hypothenuse of a right triangle necessarily does. The Legislature has designated the state highway commission as that body which has control over our state highways. It is the body which determines the necessity of such construction. As such body, it has the power of acquiring rights of way and the power to designate and lay out the state highways. With this power the municipality cannot interfere.

A contrary construction would permit the state to build main trunk lines, the arteries through which flows the life blood of intercity, intercounty, and interstate traffic, either to the limits of a town, then skip to the the other end of the village and begin the work again, leaving the space through the village and the mode of travel to be determined by the city fathers who may or may not improve its streets, and who may insist that the travel be over and upon a street where dangerous curves and railroad crossings are located, or the highway commission could adopt the other alternative and bypass the community in order to have uniform connecting highways.

The illogical consequences of a contrary construction were clearly set out by the Supreme Court of Georgia, which said: "If the towns and cities can prohibit the state from locating and building public highways within their limits, we see no reason why they could not refuse to permit the state to connect its roads with the streets within their limits; but one would hardly go so far. The truth is that the streets of the towns and cities belong to the state as do the county public roads. The Legislature has given to the municipalities temporary control over the streets within their borders, which it can wholly withdraw or modify at will." Lee County v. Mayor, etc., of Town of Smithville, 154 Ga. 550, 115 S. E. 107, page 112.

In a very early Ohio case this same question arose. The question was whether the county commissioners had the power to lay out and establish a road entirely within the limits of an incorporated town.

The act for opening and regulating roads and highways in Ohio, at that time, conferred general power upon the commissioners of the county to lay out and establish roads within the limits of the county. Swan's Stat. p. 796. On the issue presented the court said: "Now it is not pretended that the county authorities can establish township roads or streets for an incorporated town. But this does not prove that the county authorities may not establish a county road through or within the limits of a township or incorporated town. Whether a road be a county road or not, does not depend upon its length; but whether the county commissioners establish it as a county road; and whether they should establish it or not depends upon considerations of public utility, of which the law has made them the judges, subject only to such control as is provided by law on ap-

peal to the courts. There could not be a better illustration of the remarks just made than the road under consideration; it is a road connecting the public landing-place on the Ohio River, at Wellsville, with the state road leading to Cleveland." Wells v. McLaughlin et al., 17 Ohio, 99, at pages 100 and 101.

In overruling the demurrer, the district court erred, and should be reversed, and the cause is therefore remanded to the district court, with instructions to sustain the demurrer and dissolve the injunction, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.