Hillsborough, }
June 2, 1953. }  No. 4197.

MARIE BETH BOURGET *p. p. a.* ANTOINETTE BOURGET

*v.*

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.

SAME

*v.*

NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

*Craig & Craig (Mr. William H. Craig* orally), for the plaintiff.

*Sulloway, Jones, Hollis & Godfrey (Mr. Jones* orally), for the defendant Public Service Company of New Hampshire.

*Burns, Calderwood & Bryant (Mr. Bryant* orally), for the defendant New England Telephone & Telegraph Company.

GOODNOW, J. The accident in question occurred on the evening of November 19, 1948, when the automobile in which the plaintiff was a passenger was being operated southerly on South Main Street in Manchester and collided with a validly licensed utility pole near the intersection of the south line of Milford Street and the west line of South Main Street. The operator of the automobile was the plaintiff's father. At the time of the accident it was raining heavily. South Main Street is a city street, with an area used for vehicular traffic limited by a curbing and a sidewalk on each side beyond the curb. North of its intersection with Milford Street, the traveled part of South Main Street as marked by the curbs is forty feet in width. South of the intersection it is thirty feet in width. The mouth of Milford Street at its intersection with the west line of South Main Street is approximately one hundred thirty-three feet in width. The narrowing of the traveled area of South Main Street occurs wholly on the west side of the street so that a projection of the west curb line of the street southerly across the Milford Street intersection runs ten feet westerly of the curb which starts south of the intersection. The east side of the pole in question was one foot four inches westerly of the outside edge of the curb on the westerly side of South Main

Street. Northerly of the pole, the curb curves around into Milford Street with the distance from the north side of the pole to the outside edge of the curb on the southerly side of Milford Street varying from seven to nine and a half feet. The top of the curb is from four to five inches above the road surface. In the ten foot area west of the curb there is a public sidewalk adjacent to the property line and a narrow strip of land between the sidewalk and the curb in which the pole was located. The negligence of which the plaintiff complained was that the pole in question was improperly located and maintained.

The duty of a utility company to so locate poles, which it is licensed to maintain within the limits of a public highway, that they will not unreasonably interfere with the safe, free and convenient use of the highway for public travel is well established by our decisions in the cases of *Hayes* v. *Company*, 86 N. H. 486, and *Twardosky* v. *Company*, 95 N. H. 279. The amendments to P. L., *c.* 97, under which the *Hayes* case was decided, made by Laws 1935, *c.* 100, did not change this fundamental duty. The broad language of the amending statute providing that "the location of any . . . pole . . . when designated by the selectmen" is to be "conclusive as to the right of the licensee to construct and maintain the same in the place located without liability to others." Laws 1935, *c.* 100, *s.* 10, now Laws 1945, *c.* 188, *pt.* 24, *s.* 9, is immediately followed by two exceptions: "except for negligence in the construction, operation, or maintenance of the same . . . and except as is expressly provided herein." By *s.* 17 of the same chapter (now Laws 1945, *supra*, *s.* 17), responsibility of utilities is clearly provided when a validly licensed pole "has been constructed, maintained, or operated . . . in a negligent manner, or in an improper location." In support of our opinion that the amendments to P. L., *c.* 97, were not intended to change the doctrine of the *Hayes* case, it is significant that this language imposing liability for the "improper location" of a pole (*Hayes* v. *Company*, *supra*, 488) was added to *s.* 17 as originally proposed, by the 1935 Legislature. Journal of the House, 1935, *p.* 825. The license under which any utility pole is placed is not determinative of the requirements of the public safety in the use of the street but is a grant of permission subject to those requirements. *Twardosky* v. *Company*, *supra*, 280.

The fact that the pole in question here was adjacent to the traveled part of a busy city street in contrast to the poles in the *Hayes* and *Twardosky* cases which were located beside country roads does

not alter the primary duty imposed upon a utility. Nor is the propriety of a pole's location determined as a matter of law solely because it is located in that part of the highway commonly occupied in cities by a sidewalk and such obstructions as traffic lights and signs, hydrants and utility poles, outside of and separated by a curbing from the area used by vehicles. "The liability for improperly placing a pole in the highway 'arises out of the neglect of the precautions required by the conditions of public travel.' " *Twardosky* v. *Company, supra,* 280. Those conditions are to be determined in the light of all the surrounding circumstances, including the width and course of the traveled part of the way, the nature and amount of traffic thereon and the actual location of the pole as well as the existence of a curbing. If under all the conditions, the pole does not unreasonably interfere with public travel on the highway, its location is proper; otherwise it is improper.

The question of whether the pole was placed in such a position that it unreasonably interfered with the safe, free and convenient use of the highway for public travel was properly submitted to the jury. During the view, the jury saw the location of the pole, the nature, widths and course of South Main Street and of Milford Street intersecting it just north of the pole's location. Photographs and scaled plans were introduced in evidence. It is apparent that the pole in question was located in the general direction of travel for one going south on South Main Street. On the night of the accident, it was raining heavily. The pole was located "in a dark corner." The driver was blinded by the lights of a car headed north on South Main Street. While the darkness, the storm and the lights of the car headed north were not matters over which the defendants had control, they were foreseeable circumstances in regard to which the pole's location was to be determined. Such evidence is sufficient to support a finding by the jury that the pole was so located as to constitute an unreasonable interference to public travel. The continued location of a pole in this spot since 1891, its separation from the traveled area by a curb and its distance from the curb's edge at whatever point the automobile was found to have crossed the curb did not conclusively determine the reasonableness of the pole's location. These were all circumstances in the light of which the jury was to determine whether there had been any "neglect of the precautions required by the conditions of public travel."

The defendants' contention that in the locating of the pole they were improperly required to anticipate that a vehicle would be operated exactly as the Bourget automobile was operated is without merit. The driver's conduct, which the jury found to have been negligent, was not one of the circumstances submitted to the jury for its consideration in determining whether the pole was improperly placed. Its verdict against the defendants was not a finding that the pole was so placed as to interfere with the negligent use of the highway by this driver but a determination that the pole at its location created an unreasonable obstruction to public travel. It also found as a separate fact that the driver's negligence contributed, with that of the defendants, to cause· the accident.

The statute (Laws 1945, c. 188, *pt.* 24, *s.* 9) and our decisions (*Hayes* v. *Company, supra; Twardosky* v. *Company, supra*) impose a duty upon utilities to so locate their poles as not to unreasonably interfere with the safe, free and convenient use of the highway for public travel. It does not follow, as claimed by the defendants, that liability on account of a pole's location is imposed only for "those collisions which occur where the operator was making a safe use of the highway." If a utility violates its duty by improperly locating a pole and a collision occurs as a result, in whole or in part, of that violation of duty, its liability depends upon recognized common law principles. To those who were without fault for the accident, it is liable; to those who were at fault in some degree, it is not liable. While the making of such a claim is carefully avoided by the defendants, the limitation on their liability which they suggest would, in effect, impute the negligence of the driver of a motor vehicle to his passengers, contrary to the well recognized rule in this state. *Jones* v. *Railroad*, 83 N. H. 73, 76. The accomplishment of such a drastic change was not intended by the statute.

We cannot agree with the defendants that the accident would have happened irrespective of the pole being located as it was. Unlike the situation in *Labor* v. *Company*, 92 N. H. 256, where it was said that the pole in question was so "close to a stonewall" that if no pole were there a crash against the wall could not have been avoided, the nearest object beyond the pole in the case at bar, in the general direction in which the vehicle was traveling, was at least fifty feet distant. From the fact that the brakes were not applied by the driver in the short distance between the curb's edge and the pole, it does not follow conclusively that they

would not have been applied in the substantial number of feet available before the next stationary object.

The lights of the other car which blinded the driver may have been a cause of the accident but it is obvious that had there been no pole at this location a collision with it could not have occurred. That the driver, upon being blinded, swerved suddenly and sharply to his right into the pole was not a compelled conclusion. The evidence as to the course of travel of the vehicle before the accident was sufficient to support a finding that the pole's location created a risk that it would be struck by a vehicle proceeding in its general course of travel and that the impropriety of its location was a proximate cause of the accident. *Martin* v. *Kelley*, 97 N. H. 466, 468.

The question of whether the defendants were negligent in the manner in which they maintained the pole was also properly submitted to the jury. Responsibility to persons injured is imposed by statute (Laws 1945, *c.* 188, *pt.* 24, *s.* 17) when a pole which has been validly licensed is "constructed, maintained, or operated . . . in a negligent manner." The pole in question was a dark brown, creosoted pole. Whether due care, under all the circumstances, required the defendants to paint it a different color or to place reflectors upon it was properly a question for the jury. The fact that all the other poles in Manchester were the same color did not relieve the defendants of their common law duty to give warning of the pole's presence if ordinary care required it. Nor was expert testimony required to prove such a duty. It was a question "upon which the judgment of the jury was sufficient." *Twardosky* v. *Company, supra,* 282. The evidence concerning the "blinding" of the driver by the lights of a car headed north is not so conclusive that it must be ruled as a matter of law that no connection could be found between the lack of a warning color or reflector on the pole and the accident. *Brock* v. *Robinson,* 97 N. H. 334, 336.

The motions of the defendants for directed verdicts were properly denied.

The defendants excepted to the Trial Court's failure to charge in effect that if the driver's conduct was the sole cause of the accident, the plaintiff could not recover against them. "The test to determine the worth of [this exception] is to inquire whether it is reasonably certain the jury understood from the charge that they were to consider [this issue] in deciding whether"

the plaintiff was entitled to recover. *Paradis* v. *Greenberg*, 97 N. H. 173, 175, and cases cited.

The requested instructions called for a special emphasis of the principle that without a finding of legal fault there can be no finding of liability. In its charge, the Court described at length the principles of legal fault, both generally and in reference to the claims made against the defendants. It was pointed out distinctly and frequently that unless the jury found some degree of fault on the part of the defendants no verdict could be returned against them. While the Court failed to include a specific statement that the plaintiff was not entitled to recover if the driver was solely to blame for the accident, we are of the opinion that the explicit instructions concerning the dependency of a finding of liability upon a finding of fault sufficiently pointed up the matter raised by the defendants' requests. The Trial Court could reasonably conclude that the jury understood that if the defendants were without fault, or in other words that the driver was solely to blame, the plaintiff was not entitled to recover against them.

In the course of the argument of counsel for the plaintiff to the jury, the following proceedings occurred: *"Mr. Craig*: . . . Are you going to allow Marie to say in the future, 'The scars on my face, Dad, were made by your one hundred percent negligence'? Are you going to allow her in the future to look in the mirror and look at her Dad and say, 'You did this to me'? *Mr. Burns*: Just a moment. We object and if allowed to stand we would like our exception as being prejudicial argument. *Mr. Jones*: I will join with Mr. Burns. *Mr. Craig*: I will take it back. *The Court*: Withdrawn from your consideration. *Mr. Burns*: Reserve our exception. *Mr. Craig*: I will withdraw it. I said I want no sympathy; we don't; she doesn't."

The exception claimed by the defendants is overruled. *Hanson* v. *Blake*, 92 N. H. 396, 399, and cases cited. The only ruling made by the Court upon the defendants' objection was "withdrawn from your consideration." This in no way sanctioned the argument or overruled the defendants' objection thereto. On the contrary, it plainly instructed the jury to disregard the argument. The defendants' objection was not overruled and there was nothing to which the defendants could "reserve" their exception. "An exception involving the propriety of argument to the jury will not be considered by this court unless it clearly appears that it was taken to the refusal of the trial court to sustain an objection."

*Whipple* v. *Railroad,* 90 N. H. 261, 266.

Originally, three actions were brought by the plaintiff, by her mother and next friend, Antoinette Bourget, one against her father, Henry A. Bourget, the driver and the two present actions against the defendants. Three other actions were brought by Antoinette individually to recover for medical expenses and loss of services of her daughter. The two actions against Henry A. Bourget were settled with a reservation of all rights against others. Motions to abate the two actions brought by Antoinette against the defendants were thereafter granted. Subsequently, two new actions were brought by Henry A. Bourget against the within defendants seeking damages for personal injury and property damage and also for medical expenses and loss of services of his daughter. The two original actions brought by the plaintiff, by her mother, against the within defendants and the two actions brought by her father were consolidated and tried together.

During the course of cross-examination of both the father and the mother, the defendants excepted to the refusal of the Trial Court to permit the introduction of evidence that suits, previously settled, were brought against Henry A. Bourget by his daughter and by his wife. This evidence was offered as bearing upon the credibility of the witnesses themselves and upon the good faith of their daughter, the plaintiff here.

The wrong alleged in the action brought by the plaintiff against her father and that alleged in the two actions against the defendants was one of concurrent negligence. The bringing of the action against her father was not inconsistent with the maintenance of the actions against these defendants. *Masterson* v. *Railway,* 83 N. H. 190, 193; *Calley* v. *Railroad,* 93 N. H. 359, 362. Since Mrs. Bourget was not called to testify in support of her husband's due care, the bringing of that action had no bearing on the credibility of either parent as a witness nor on the good faith of the plaintiff.

The damages for medical expenses and loss of services sought to be recovered in the wife's action against her husband were the same damages sought to be recovered by him against these defendants in actions brought after judgment in his wife's action against him. While the right of both parents to maintain actions for the same damages at the same time is doubtful (*Woodman* v. *Peck,* 90 N. H. 292, 294), the fact that Mrs. Bourget had earlier sought to recover the same damages from Mr. Bourget had no

bearing under the circumstances of this case, upon the credibility of either of them as witnesses in the actions now before us. Nor could it in any way reflect a lack of good faith on the part of the plaintiff who was not a party to either action. The exceptions are overruled.

The defendants take nothing by their exception to the Court's refusal to allow a witness, acquainted over a long period with the pole in question, to testify as to whether the pole constituted a hazard to vehicles traveling south on South Main Street. "The question of whether a witness . . . has knowledge on the subject-matter of his testimony so superior to that of men in general concerning it that his views will probably assist the triers of facts" is addressed to the sound discretion of the Trial Court. *Dowling* v. *Shattuck,* 91 N. H. 234, 236. No abuse of that discretion appears in the ruling to which the defendants excepted.

The defendant Telephone Company owned the pole in question. Over two years before the accident it removed its wires from the pole and the defendant Public Service Company was the only utility using the pole thereafter. The Telephone Company excepted to the denial of its motion for a directed verdict on the ground that it was not in control of the pole at the time of the accident and to the Trial Court's refusal to submit the issue of control to the jury. The statute (Laws 1945, *c.* 188, *pt.* 24, *s.* 17) imposing liability refers to any pole "which has been constructed, maintained, or operated." The Telephone Company's responsibility for the pole which it owned was not terminated by the removal of its wires from the pole or by any grant of control of the pole to the other defendant. It constructed the pole at this location and its responsibility to see to its proper location and maintenance continued until it relinquished its ownership, without regard to whether it was making any use of the pole at the time of the accident. Its exception is without merit.

*Judgment on the verdicts.*

All concurred.