348 P.2d 274

STATE of New Mexico ex rel. STATE HIGHWAY COMMISSION of New Mexico, Plaintiff-Appellant,

v.

TOWN OF GRANTS, New Mexico, Defendant-Appellee.

No. 6306.

Supreme Court of New Mexico.

Jan. 7, 1960.

356

Fred M. Standley, Atty. Gen., John T. Watson, Snyder H. Downs, Sp. Asst. Attys. Gen., for appellant.

Chavez & Cowper, Belen, for appellee.

CARMODY, Justice.

This is an appeal from an order of dismissal sustaining a motion to dismiss upon the ground that the complaint failed to state a cause of action upon which relief could be granted.

Plaintiff Highway Commission filed a complaint which alleged that U. S. Highway 66 runs through the Town of Grants and that such highway was in existence prior to the incorporation of the town and prior to the time certain water and sewer pipes and facilities were available; that these facilities were owned and managed by the defendant in the year 1954 when it was determined by the plaintiff that the highway should be reconstructed. Plaintiff alleged also that prior to the reconstruction, it was assured by the water superintendent and the mayor of the defendant town that the water and sewer lines were of sufficient depth so that they would not interfere with the reconstruction; that

thereafter the plaintiff let a contract for the work, but that in May of 1955 the contractor discovered that the sewer and water lines must be replaced in order to complete the project and reconstruct the highway to meet the needs of the traveling public; that upon such discovery the defendant was notified to relocate its lines, but that it claimed it had no funds and refused to do so; that upon such refusal and because the highway was torn up, it was necessary for the plaintiff itself to remove and relocate the lines to provide a safe and adequate state highway and to avoid a dangerous condition; that thereby an obligation was incurred by the defendant involuntarily and as a result of an emergency, and that plaintiff was required to expend the sum of $40,763.76 and that demand for the payment of said sum has been refused. The plaintiff then prayed for a declaration of the legal rights in relation of the parties and for a judgment in the above amount.

To this complaint the defendant filed a motion merely stating that the complaint failed to state a cause of action upon which relief may be granted.

Subsequently, an order of the district court was entered which found that the motion was well taken and that the complaint should be dismissed. No specific grounds were set forth in the order, nor were any findings made by the court, and upon appeal plaintiff sought and obtained from this court an order granting the appellant the right to file a pro forma brief under rule 15, paragraph 5, of the rules of the supreme court which called upon the appellee to specify and maintain the insufficiency of the complaint.

Thereafter, appellee filed its brief, stating very generally the grounds upon which it contends that the complaint failed to state a cause of action.

The contentions raised by the defendant unfortunately do not directly raise the true problem involved in this litigation. However, they are:

(1) That the defendant cannot be held responsible for the representations of the mayor and the water superintendent. With respect to this point, apparently the cause of action is not in any sense based upon these representations, but, in any event, should the defendant contend that this has any direct relation to the problem, it is a matter which should be raised by answer and can be disposed of at the trial.

(2) The defendant then apparently contends that its property has been damaged and that the highway department had a legal duty to replace it or to compensate the defendant for the taking. Here, again, as with the original point raised, this is not a matter that should have been disposed of upon a motion to dismiss, but would involve questions which the defendant should plead by answer or counterclaim.

(3) Defendant then seems to contend that inasmuch as the pipes were lawfully underneath the street, that the plaintiff should have proceeded by condemnation and that this action is not well taken. This point more nearly approaches the true issue of this complaint, and will be more fully discussed hereafter.

(4) The defendant also apparently relies upon § 55–2–7(c), N.M.S.A., 1953 Comp., which relates to the powers of the highway commission to prescribe rules and regulations with respect to the placing of pipelines, telephone, telegraph and electric transmission lines and ditches along, across, over or under public highways of the state, the defendant's argument being that the legislature having authorized proper action for the violation of rules and regulations with reference to pipelines and allied utility services, that therefore, by implication, there being no allegation that the lines were installed in violation of the rules, that the legislature denied the right of removal. This contention will also be disposed of by our decision on what we believe to be the true issue involved.

(5) The defendant lastly asserts that § 55–7–18, N.M.S.A., 1953 Comp., which relates to the subject of wires, cables and conduits on a right-of-way, is not applicable to the instant case because there is no mention of water or sewer pipes. In view of our disposition of the case, we will express no opinion on the applicability of this particular section of the statute, particularly inasmuch as our decision involves a more fundamental principle.

The underlying question involved in this proceeding is whether there is a duty upon a municipality to relocate municipally owned sewer and water lines in a public highway at its own expense when it is necessary to provide a safe and adequate highway. Allied to this problem is the question that if there is such a duty upon the part of the municipality, then can the plaintiff recover for the expense of removing and relocating the lines.

To interpolate at this time, it should be noted that this case was filed before the passage of Chapter 237, Laws of 1957, which this court considered in State Highway Commission v. Southern Union Gas Co., 1958, 65 N.M. 84, 332 P.2d 1007, and therefore there is no problem as to the constitutionality of that statute.

We then proceed to the primary issue as to whether or not defendant has a duty to relocate its sewer and water lines when it becomes necessary to provide a safe and adequate highway.

Appellee, in its brief, makes the rather astounding assumption that there is no common-law duty requiring a utility to relocate its facilities at its own expense when required to do so to facilitate highway improvements. Apparently, it is on this basic premise that the appellee takes

its stand. However, not one single case is cited by the appellee in support of its position and, to the contrary, insofar as we are able to discover, the authorities are unanimous that the common law places the cost of relocating utility facilities on the owner thereof in the absence of statute to the contrary. This principle is recognized in State Highway Commission v. Southern Union Gas Co., supra. See, also, Rhyne, Municipal Law, 512, § 24-6, and should anything further be needed, the following quotation from Opinion of the Justices, 1957, 101 N.H. 527, 132 A.2d 613, 614, should forever lay this particular problem at rest:

"Utility facilities are located within public highways with permission and license and are subject to reasonable regulation and control under the police power. Bourget v. Public Service Company, 98 N.H. 237, 97 A.2d 383; RSA 254:19-23. Consequently, utilities are required to relocate their facilities at their own expense whenever public health, safety or convenience require change to be made. Detroit Edison Co. v. City of Detroit, 332 Mich. 348, 51 N.W.2d 245; Jamaica Water Supply Co. v. City of New York, 280 App.Div. 834, 114 N.Y.S. 2d 79, affirmed 304 N.Y. 917, 110 N.E. 2d 739; 12 McQuillin, Municipal Corporations (3rd ed.) §§ 34.74, 34.77. There '* · * * has been no dissent from the common law rule as enunciated by numerous courts that, in the absence of a clear statutory mandate shifting the burden to the State, utilities are obliged to relocate at their own expense their facilities located in public highways when required to facilitate highway improvements.' Public Utility Relocation Incident to Highway Improvement, House Document 127, p. 57 (84th Cong. 1st Session 1955). See also, RSA 254:23." (Italics added.)

The rationale of all of the cases on this particular subject is that the police power of the state is paramount, and that in the proper exercise thereof there may be a limitation in the use of or complete destruction of private property in order to advance public welfare without the necessity of compensation to the owner. Therefore, although utilities are permitted to locate their facilities within the public way and thereby obtain certain rights for limited purposes, these rights are subordinate to the rights of the traveling public and are subject to a reasonable exercise of the police power. See Highway Research Board Special Report 21, Relocation of Public Utilities Due to Highway Improvement and Analysis of Legal Aspects (1955), p. 28.

Most of the authorities on the subject involve cases between a state, or municipality, and a privately owned public utili-

ty. Is there a different rule where the utility is municipally owned? We think not. There are no New Mexico cases on this particular subject. However, Article V, § 14, of the Constitution of New Mexico provides:

"The state highway commission is empowered and charged with the duty of determining all matters of policy relating to the design, construction, location, and maintenance of state highways and public roads."

Even before this particular constitutional provision was adopted, Chapter 38 of the Laws of 1917 (§ 55–2–30, N.M.S.A., 1953 Comp.) placed the regulation of pipelines and other utility facilities in the highway commission. So, also, Chapter 10, Laws of 1929 (§ 55–2–7(c)) gave the highway commission additional authority over utility facilities on right-of-ways. Neither of these statutes, however, made any distinction as to ownership of the public utilities—that is, privately or publicly owned. However, there is no question in New Mexico but that the title to streets is in the first instance in the state. Gallegos v. Conroy, 1934, 38 N.M. 154, 29 P.2d 334; see, also, City of Roswell, N. M. v. Mountain States Telephone & Tel. Co., 10 Cir., 1935, 78 F.2d 379.

We have been cited no statute nor are we aware of any in existence at the time this action arose from which it could be implied that a municipality should have control over its streets to the extent that it could require the state to bear the cost of relocating utilities therein, if necessary, to construct a highway. The Supreme Court of Illinois, in Peoples Gas Light & Coke Co. v. City of Chicago, 1953, 413 Ill. 457, 109 N.E.2d 777, 781, stated the principle as follows:

"So far as its streets are concerned, a city is only an agency of the State, and whether it has the fee or only an easement in the streets it holds them in trust for the people of the entire State. So far as their use for street purposes is concerned, every citizen of the State has an equal right. (Citations). This right of the people in the streets and highways of the State, whether inside or outside the municipalities thereof, is a paramount right. The municipality cannot lawfully perform any acts itself nor permit others to do or perform anything in derogation of this right of the sovereign people, nor may the city permit any uses or encroachments which are unreasonable and against the public interest. (Citations)."

There are few cases from other jurisdictions involving the precise question as to municipally owned utilities, but all are consistent in the holding that the municipality is acting in a proprietary, not

governmental, capacity, and is therefore responsible for the cost of relocation.

City of Chadron v. State, 1927, 115 Neb. 650, 214 N.W. 297, 299, 215 N.W. 137, is a case which is quite close on its facts, the only difference being that, there, the water mains were actually outside the city limits, and not within as in the instant case. In that case, the court held that the city could not recover for the re-laying and removal of the pipes because the right of the public to use the road was the paramount right (however, the court also held that because the city had not been given a reasonable time to lower the pipes, the state would be liable for the portion of the pipe actually destroyed). The Nebraska Supreme Court said:

> "It is fundamental that the right of the state to provide roads for the use of its citizens and for the public generally is a sovereign right. If the right to make them fit and safe is a proper exercise of the police power of the state, then it must follow that any private corporation or any municipality engaged in rendering service like that of a private corporation holds whatever rights it acquires in the public roads of the state subject to these two great elements of sovereignty."

In State v. Marin Municipal Water Dist., 1941, 17 Cal.2d 699, 111 P.2d 651, 655 (prior decision, Cal.App.1940, 101 P.2d 1112), the court said:

> "It is clear that neither defendant nor any other municipal water district has the authority to maintain pipes on the highway in a position which does not afford security for life or property, and therefore that the application of section 680 to municipal water districts would not result in a limitation upon their otherwise valid power, but would operate only to prevent them from exercising their franchises in a manner contrary to law. * * *

> "* * * The determination of whether a statute constitutes a taking of property without due process of law or an impairment of the obligation of a contract consists in balancing the burden placed on the individual or corporation on the one hand against the benefit which will accrue to the public as a whole on the other. If the benefit to the public outweighs the burden on the individual, the statute is a valid exercise of the 'police power'. * * * Defendant has not been deprived of its franchise; it has simply been required to bear the expense of removing its mains to a location on the highway consonant with public welfare. The benefit to the public as a whole thus clearly outweighs the burden imposed upon defendant, * * *."

See, also, Public Service Commission v. City of New York, 1944, 268 App.Div.

121, 49 N.Y.S.2d 214, 216, affirmed 1945, 294 N.Y. 951, 63 N.E.2d 183, wherein the court said in part:

"It is now well settled that where a privately owned utility is required to rearrange its structures in a public highway because of a grade-crossing elimination, the work is to be done at its own expense. (Citation). Since the state funds provided for the grade crossing elimination may not be used to pay for the relocation of privately owned utility structures, the rule should be no different because of municipal ownership, especially where as here the rapid transit structures were operated by the defendant in its proprietary capacity. (Citations)."

Rhyne, Municipal Law, p. 496, § 23–2, says:

"Municipally-owned utilities are considered to be 'public utilities' and in general, to be held by a municipality in its proprietary capacity or in the same capacity as private utility companies hold property, rather than in its governmental capacity."

Although, as we have said, there are no New Mexico cases on the precise point involved, nevertheless in Barker v. City of Santa Fe, 1943, 47 N.M. 85, 136 P.2d 480, 484, it was recognized that there is a growing tendency to distinguish between municipalities acting in a proprietary capacity rather than a governmental capacity. That particular case involved tort liability of the municipality, but the court apparently quoted with approval McQuillin, Municipal Corporations, 2d Ed., § 2871, as follows:

"As heretofore mentioned, generally the operation of a sewerage system by a municipality is regarded as the exercise of a corporate as distinguished from a governmental function."

The distinction was again noted in Elliott v. Lea County, 1954, 58 N.M. 147, 267 P.2d 131, which, again, was a tort case, but there the court held that the operation of a county hospital was a governmental function as distinguished from a proprietary one. In any event, it would appear to us that the operation by a municipality of sewer and water facilities is in a proprietary capacity. This is in accordance with the great weight of authority. See McQuillin, Municipal Corporations, vol. 12, 3d Ed., p. 678 (§ 35.35).

It follows, therefore, that at the time this case was filed, a municipality owed a duty to relocate its municipally owned sewer and water lines which were in a public highway at its own expense when it was necessary to provide a safe and adequate highway.

 The other questions which are involved relate to the plaintiff's right to recover, in a case such as this, where it

has undertaken the expense of removing and relocating, and the allied question that if such recovery is warranted whether the obligation was an involuntary one arising out of an emergency which impairs health and safety and therefore whether or not prohibited by the constitution as to municipal indebtedness, are questions which cannot at this time be definitely answered in view of the condition of the pleadings. It is to be remembered that for the purpose of this motion all facts well pleaded in the complaint are admitted, and we cannot anticipate what defenses may be made on behalf of the defendant. However, the rule announced in Barker v. City of Santa Fe, supra, may be persuasive, if not controlling, when the court said:

"'Where municipal corporation in exercise of any of its powers, or in performance of any of its duties, incurs in contract or in delicto any liability whether arising from express legislation or by implication, it cannot escape such liability unless relieved therefrom by some valid provision of law.'"

In any case, it follows from what has been said that the trial court erred when it sustained the motion to dismiss.

The case will therefore be reversed and remanded to the trial court with directions to overrule the motion to dismiss. It is so ordered.

McGHEE, COMPTON and MOISE, JJ., and JOHN B. McMANUS, Jr., District Judge.