[No. 1746-2.    Division Two.    November 17, 1976.]

ROBERT A. SMITH, *Appellant,* v. ACME PAVING COMPANY, ET AL, *Respondents.*

*John A. Barlow* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for appellant.

*Dennis Duggan, Gallup, Duggan & Frewing,* and *Boettcher, LaLonde, Kleweno & Ladley,* for respondents.

REED, J.—Plaintiff Robert A. Smith appeals from an order of the Clark County Superior Court granting defendants' motion for summary judgment and dismissing plaintiff's damage action. We reverse and remand.

Plaintiff's complaint alleged that on November 20, 1971, at about 5:40 p.m., he was operating his pickup truck in a westerly direction on Mill Plain Road in Vancouver, Washington, when he collided with a telephone pole which, because of ongoing construction, was situated in the middle of the roadway. Plaintiff brought this action against the City of Vancouver, Acme Paving Company, the City's prime contractor on the construction project, and Pacific Northwest Bell, the owner of the pole, claiming defendants were negligent in allowing the pole to remain in the road and in failing to erect barricades and proper warning devices of the hazard thus presented. All defendants denied negligence and pleaded negligent operation by the plaintiff; defendant telephone company counterclaimed for damage to its pole, and the City and paving company cross-claimed against the telephone company for indemnity.

Defendants' motion for summary judgment was sup-

ported by plaintiff's deposition, his answers to certain inter- rogatories and the affidavit of a Vancouver police officer, who arrived on the scene at approximately 7:45 p.m. Ac- cording to the officer's affidavit he observed, at or near the base of the pole, an overturned and still lighted barricade and the broken remnants of an unlighted barricade, both of the "sawhorse" design. He further stated street lights were on, it was a clear night, and there was nothing obstructing a view of the pole. Plaintiff countered with affidavits of two persons who had seen or heard the collision and who testi- fied that it was dark, starting to rain, there were no street lights and no barricades with warning lights at or near the pole. One witness stated the barricades were "frequently knocked down or removed by the kids."

Plaintiff averred in his deposition that the accident oc- curred at a time when it was almost dark and visibility was very poor, "That time of night when it's hard to see, and it was misting." He further stated there were no street lights, that his vehicle lights were on and that he did not see the pole or any warning of its presence before the collision. Plaintiff admitted he had previously driven both directions on the road, had driven easterly that very morn- ing and knew of the presence of the poles in the middle of the roadway. He further stated it was necessary to pass to the right of the line of poles when heading westerly and that there was a large curb on the right and the pole would have "barely cleared my mirrors."

The accident occurred when plaintiff was overtaken on the left by another westbound vehicle which came "whizz- ing around me and pulled in front of me and slammed his brakes on." Plaintiff sought to avoid collision with this vehicle by veering to his left and in so doing his foot slipped and became wedged between brake and gas pedal, accelerating his vehicle into the pole.

In its order granting summary judgment the trial court found, *inter alia*:

Plaintiff had previously noticed the utility pole, and was aware of its placement. On prior occasions he had driven

the same route under similar conditions, and was aware of the fact that this particular utility pole was in place. He was further aware of being able to pass the pole to the right.

At the time of the occurrence . . . there may have been no street lights on, or on in the immediate vicinity, and it may have been raining, or starting to rain. In addition there is some question as to whether barricades were in place, and whether or not lighted barricades were functioning at the time of the occurrence.

As plaintiff was thus proceeding in the westerly direction another vehicle went "whizzing" past him, pulled in front of him and slammed on his brakes. Plaintiff then turned his steering wheel to the left and went to step on the brakes when his foot wedged between the brake pedal and the gas pedal, and the car then went into passing gear and jumped into the telephone pole.

Upon these findings the court then concluded that the presence or absence of barricades was immaterial because they would not have prevented the collision. The court further concluded there was no genuine issue of material fact and that defendants were not negligent, but if they had been, such negligence would not have been a proximate cause of the accident, having been superseded by an independent intervening cause, i.e., the passing vehicle.

While often noting the beneficial use to which summary judgments may be put in dismissing unfounded claims, courts have at the same time recognized they must be employed with caution lest worthwhile causes perish short of a determination of their true merit. *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960). As noted in *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 951, 421 P.2d 674 (1966):

> The object and function of summary judgment procedure is the avoidance of a useless trial. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963). A summary judgment is properly granted if the pleadings, affidavits, depositions or admissions on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Balise v. Underwood, supra; Capital Hill Methodist*

*Church of Seattle v. Seattle,* 52 Wn.2d 359, 324 P.2d 1113 (1958); . . . In ruling upon such motion, it is the duty of the trial court to consider all evidence and all reasonable inferences therefrom most favorable to the nonmoving party. *Reed v. Streib,* 65 Wn.2d 700, 399 P.2d 338 (1965); *Balise v. Underwood, supra.* If, from this evidence, reasonable men could reach only one conclusion, the motion should be granted. *Balise v. Underwood, supra; Wood v. Seattle,* 57 Wn.2d 469, 358 P.2d 140 (1960).

Stated another way it is not the function of the trial court to weigh the evidence thus to be considered and so construed, and summary judgment of dismissal must be denied if a right of recovery is indicated under any provable set of facts. *Fleming v. Smith,* 64 Wn.2d 181, 390 P.2d 990 (1964).

### NEGLIGENCE ISSUES

Application of these fundamental rules to the instant case does not support the granting of summary judgment. All of the evidence and the reasonable inferences therefrom, when construed most favorably to the plaintiff, show clearly the existence of genuine issues of material fact. Plaintiff has successfully framed issues of negligence on the part of the defendants in permitting the pole to remain in the roadway and in failing to place and maintain barricades and warning devices. Can it be said that all rational minds would agree the defendants' conduct was not negligent when considered in the light of the duty owed by defendants to persons using the roadway? We think not. That duty has usually been expressed as requiring that streets be maintained in a reasonably safe condition and that users be reasonably and adequately warned of any inherently dangerous or deceptive conditions and, in certain instances, that adequate barriers be placed and maintained. *Raybell v. State,* 6 Wn. App. 795, 496 P.2d 559 (1972); *Bartlett v. Northern Pac. Ry.,* 74 Wn.2d 881, 882, 447 P.2d 735 (1968); *Owens v. Seattle,* 49 Wn.2d 187, 299 P.2d 560, 61 A.L.R.2d 417 (1956); *Bullock v. King County,* 179 Wash. 167, 36 P.2d 609 (1934). We think the rule is particularly applicable where the conditions complained of

arise out of the actual construction, repair, and maintenance of the roadway. *Bullock v. King County, supra.* Therefore, in order to determine if that duty has been breached in the instant case, factors such as the narrowness and other conditions of the roadway, location of the pole, presence or lack of illumination, presence or lack of warning devices and barricades, and the presence, volume, and behavior of traffic and the like must be weighed and considered. *Scheel v. Tremblay,* 226 Pa. Super. 45, 312 A.2d 45 (1973); *cf. Breivo v. Aberdeen,* 15 Wn. App. 520, 550 P.2d 1164 (1976). The record here relied upon by defendants no more than highlights the existence of genuinely disputed issues of fact as to such matters, and in no way negates the possibility of establishing negligence. Clearly it cannot be said as a matter of law there was no duty or that no duty was breached.

## PROXIMATE CAUSE

■ Defendants contend, however, that resolution of the primary negligence issue in plaintiff's favor would avail him nothing because such negligence was not a proximate cause of plaintiff's accident. This argument appears to be based on plaintiff's testimony his foot slipped and the vehicle accelerated into the pole rather than being steered there voluntarily. Thus, it is contended, and the trial judge believed, that warning devices and lights would not have prevented the collision. While issues of proximate cause do not generally lend themselves to summary adjudication, courts are not precluded from so ruling in appropriate cases. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975); *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964); P. Trautman, *Motion for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1 (1970). In such cases the issue of proximate cause must be accorded the same treatment as any other issue, and the trial court may grant summary judgment as a matter of law only if there is no genuine issue as to proximate cause. *LaPlante v. State, supra; Pratt v. Thomas,* 80 Wn.2d 117, 119, 491 P.2d 1285 (1971); *Lundgren v. Kieren, supra.*

In the instant case, plaintiff testified he knew of the existence of the poles in the roadway; he did not say he knew the *exact* location of this *particular* pole. He stated that, although he was familiar with the condition of the road, it was only "In a sense. The way they had it tore up, it was never the same two days in a row, so you couldn't be very familiar with it." He also testified that at the point where the accident occurred he was traversing a narrow gravel way between the poles and a high curb. Confronted with the sudden apparition of the other vehicle he turned the steering wheel left; "I veered left to keep from hitting him." He states he saw no pole and no barricades or warning lights at that point. Clearly, reasonable minds could find (1) there would have been no injury had the pole not been placed and maintained in a dangerous position on the highway; (2) that proper warning devices might have resulted in plaintiff being able to see the pole and thereby avoid collision with it, and (3) that a cause of the phantom automobile's abrupt cutting in and braking was its own sudden confrontation with an unexpected pole.

The situation is akin to that presented in *Ohio Bell Tel. Co. v. Lung*, 129 Ohio St. 505, 196 N.E. 371 (1935), where the court said at page 509:

> The telephone pole played a part in wrecking the automobile and causing the death of the occupants. It is purely speculative to say that if the automobile had missed the pole, it would have run on and hit the gasoline pumps or the filling station with the same fatal result. The driver, perhaps, may have made the turn on the cinders and regained the main highway. In our judgment the question of proximate cause was one for the jury and not for the court.

*Bourget v. Public Serv. Co.*, 98 N.H. 237, 97 A.2d 383 (1953); *Alpine Tel. Corp. v. McCall*, 143 Tex. 335, 184 S.W.2d 830 (1944); *Cambridge Home Tel. Co. v. Harrington*, 127 Ohio St. 1, 186 N.E. 611 (1933). So, in the instant case, one cannot speculate on the ultimate fate of the plaintiff's car had it not struck the pole and the question of

proximate cause was for a jury. *Cf. Breivo v. Aberdeen, supra.*

## SUPERSEDING CAUSE

■ Finally, we cannot agree with the trial court's conclusion that defendants' negligence, if any, was as a matter of law, superseded by the action of the overtaking vehicle. There may, of course, be more than one proximate cause of an injury, and the concurring negligence of a third party does not necessarily break the causal chain from original negligence to final injury. *State v. Jacobsen,* 74 Wn.2d 36, 442 P.2d 629 (1968). Where a defendant's original negligence continues, and contributes to the injury, the mere fact another's intervening negligent act is a further cause of the accident does not prevent defendant's act from constituting a cause for which he is liable. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *State v. Jacobsen, supra; Eckerson v. Ford's Prairie School Dist. 11,* 3 Wn.2d 475, 101 P.2d 345 (1940).

■ The intervening negligent act of another will not supersede the original actor's negligence as a proximate cause of an injury where the original actor should reasonably foresee the occurrence of such an event. *Fosbre v. State,* 70 Wn.2d 578, 424 P.2d 901 (1967); *Berglund v. Spokane County,* 4 Wn.2d 309, 103 P.2d 355 (1940); Restatement (Second) of Torts § 447 (1965). Only when the intervening negligence is so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a matter of law, will it be held to supersede defendant's negligence. *Jones v. Leon,* 3 Wn. App. 916, 478 P.2d 778 (1970); *Sitarek v. Montgomery,* 32 Wn.2d 794, 203 P.2d 1062 (1949). Restatement (Second) of Torts § 447, *supra.* As stated in *Maltman v. Sauer,* 84 Wn.2d 975, 530 P.2d 254 (1975), at 982:

> The trier of fact must determine if an intervening act has broken the causal chain between the conduct of the defendant and the injury of the plaintiff.
> If the act itself is not foreseeable . . . it will break the causal connection between the defendant's negligence and the plaintiff's injury.

. . . "Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause."

(Citation omitted.)

And, in *Rikstad v. Holmberg*, 76 Wn.2d 265, 456 P.2d 355 (1969), the court stated at page 269:

It is not, . . . the unusualness of the [intervening] act that resulted in injury to plaintiff that is the test of foreseeability, but whether the result of the act is within the ambit of the hazards covered by the duty imposed upon defendant.

The trial court's ruling in the instant case can be sustained only if we can say that all reasonable men would agree that the swerving motorist was an unforeseeable contingency—an event so highly extraordinary or improbable it could not reasonably be anticipated or expected—given the existence of the pole in that location and the other conditions then prevailing or likely to prevail. *Sitarek v. Montgomery, supra.* This we cannot say; the question should properly have been submitted to the jury for its resolution since it is conceivable they could find the maneuverings of the phantom car to be within the reasonably foreseeable realm of peril or ambit of hazard created by defendant's negligence. *Rikstad v. Holmberg, supra; Wright v. Kennewick*, 62 Wn.2d 163, 381 P.2d 620 (1963); *Ward v. Arnold*, 52 Wn.2d 581, 328 P.2d 164 (1958). We find indirect support for such an assumption in *Baumgardner v. American Motors Corp.*, 83 Wn.2d 751, 757, 522 P.2d 829 (1974), where our Supreme Court notes it is not only reasonably foreseeable that automobiles will be misused but that it is "indeed . . . statistically inevitable," they will collide.

For the reasons stated, the summary judgment must be vacated and the cause remanded for trial.

PETRIE, C.J., and SWANSON, J., concur.