399 P.2d 179

SANITARY DISTRICT NO. 1 OF PIMA
COUNTY, Arizona, and City of Tucson,
a municipal corporation, Appellants,

v.

STATE of Arizona ex rel. William E. WIL-
LEY, State Highway Engineer, Appellee.

No. 2 CA–CIV 17.

Court of Appeals of Arizona.

Feb. 24, 1965.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellant Sanitary District No. 1.

Calvin Webster, City Atty., Tucson, for appellant City of Tucson.

Robert W. Pickrell, Former Atty. Gen., Darrell F. Smith, Atty. Gen., by J. Mercer Johnson, Sp. Asst. Atty. Gen., Tucson, for appellee.

MOLLOY, Judge.

This case arises out of a controversy between the State of Arizona, the Sanitary District No. 1 of Pima County, Arizona, and the City of Tucson as to which of these public agencies should pay for the cost of relocating a sewer line, the relocation of which is made necessary by highway construction.

The lower court rendered judgment in favor of the State requiring both defendants, and each of them, to "remove" from the right-of-way of the State of Arizona the sewer line in question at the intersection of state highway Route 84 with Grant Road in Tucson, Arizona. At this intersection, the relocation of a 30 inch interceptor sewer line constructed by the defendant Sanitary District in 1949–50 was made necessary by the construction in 1960–61 of an underpass under the state highway for the passage of Grant Road, a public street in the City of Tucson.

The subject state highway is a part of the federal interstate system. The underpass in question is being constructed as an urban project with federal financing in part, the sponsoring public body being Pima County.

The right-of-way in which the subject sewer line was constructed was acquired by the plaintiff for a state highway some time prior to 1949. A written permit for the installation of the sewer at the place where

it was installed was issued by the plaintiff November 25, 1949.

Plaintiff's complaint is based upon paragraph 6 of this permit, which provides as follows:

"That if at any time hereafter the right of way, or any portion thereof, occupied and used by the Licensee may be needed or required by the Licensor, any permit or license granted in pursuance of this application, may be revoked by the Licensor and all right thereunder terminated, and upon sufficient notice, the Licensee shall and will remove all property belonging to said Licensee."

The plaintiff for its cause of action against the defendant City of Tucson alleged that the city had an "interest in the above described sewer line acquired since the date of the above described permit". This was denied by the city in its answer and no proof was offered thereon at the time of the trial. There was, however, a stipulation by counsel for all of the parties to the effect that: "The City of Tucson's interest in the pipeline on the State's right-of-way is by agreement to maintain it for its entire length in the exercise of the governmental function."

It was further stipulated at the time of trial that it was necessary to reconstruct the highway at the intersection in question and that by virtue of said construction it would be necessary to relocate the interceptor sewer in question so as not to interfere with the traffic which would be passing through the new underpass to be constructed. The plaintiff established that it gave written notice to remove the portion of the sewer line in question and there is no contention made that the notice was unreasonably short.

Both defendants have appealed from the judgment of the lower court.

The City of Tucson predicates error on the basis that the court had no evidence whatsoever before it from which it could find there was any obligation on the part of the defendant City of Tucson to remove the sewer line in question.

This assignment can be disposed of almost summarily. In order to grant relief, there must be some legal theory upon which it is based, and some evidence in support thereof. There is neither in this case. From the stipulation that the City is obligated to "maintain" the sewer line in question, there arises no obligation to remove same. State ex rel. City of Chillicothe v. Wilder, 200 Mo. 97, 98 S.W. 465 (1906); American Trust Co. v. Trust Insurance Exchange, 147 Cal.App.2d 395, 305 P.2d 73 (1957).

As far as it appears from the record, there is no other interest of the City of Tucson in this particular sewer line. The judgment against the City of Tucson should therefore be reversed.

The defendant Sanitary District contends that the court erred in three respects: (1) that the permit in question expired by its own terms as of September 1, 1950; (2) that the plaintiff was estopped from denying the right of the Sanitary District to maintain its sewer line in the location where it was constructed; and (3) that the court should have determined upon which public agency fell the obligation of relocating the sewer line in question, rather than merely ordering the line removed from the intersection.

The contention of the Sanitary District that the permit in question expired by its terms arises principally from words: "Expiration date: 9/1/50", which were appended to the document in question by the deputy state engineer of the Arizona State Highway Department when the permit in question was issued.

The permit is a standard form of the Arizona State Highway Department, which the evidence indicates has been used for many years for the issuance of permits similar to the one here. The permit is in the form of a letter addressed to the Arizona State Highway Commission which is signed by the applicant. There are various blanks in the letter to be filled in by the applicant. One of these blanks is for the "purpose" of the project and this was filled in by the

applicant-Sanitary District with the words: "Constructing a sewer known as the 'West' Interceptor Sewer for Sanitary District No. 1 of Pima County, Arizona".

After the letter-application is a space provided for the approval of the district engineer; here there was typed in above the approval signature: "Completion date, September 1, 1950".

The next portion of the document is labeled: "Permit and License" and is devoted to an approval by the Arizona State Highway Department. This permit was signed on behalf of the Highway Department on November 25, 1949. To the left of the approval signature there appear the words upon which the defendants place great significance: "Expiration date: 9/1/50".

Emphasizing the portions quoted above, the argument is made by the Sanitary District that the permit was only for the *"constructing"* of a sewer and not for the keeping of the construction on the right-of-way after construction. Under this argument, the permit by its terms, together with all obligations thereunder, expired on September 1, 1950.

■ A contract should always be construed as a whole, and all portions thereof given a reasonable meaning, in the light of all other provisions. Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003 (1953); Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957).

So construing this agreement, it is apparent that there are several provisions of this permit which were intended to have effect beyond the "expiration date" specified in the contract. There is, for instance, the provision in paragraph "5" of the permit:

> "That if the title and possession of any property placed upon the right of way by the Licensee remains in said Licensee, the Licensee shall and will promptly perform all necessary repair work upon written notice from the Licensor, and will not permit or allow any condition to exist which would be a haz-

ard or source of danger to the traveling public."

Given their literal meaning, the words: " * * * if at any time hereafter * * * " contained in paragraph "6", the paragraph with which we are concerned here, indicate an intent to extend the obligations so prefaced indefinitely into the future.

The words: "Expiration date: 9/1/50" do not appear to have been a part of the agreement when executed by the applicant. These words are obviously tied in with the words: "Completion date, September 1, 1950", also added to the contract by the highway department personnel after the Sanitary District made its application.

■ A contract should be construed in the light of the surrounding circumstances. Smith v. Neely, 93 Ariz. 291, 380 P.2d 148 (1963). Here, the work contemplated is of a type intended to take some limited time to construct, with the results of such construction to remain in the ground for an indefinite time into the future. Both the construction and the keeping thereof on the public highway are subjects which should be controlled and regulated so as to not interfere with the traveling public unnecessarily. The permit in question is the only written agreement between the parties pertaining to this sewer line.

■ Considering these surrounding circumstances, and reading the contract as a whole, this court comes to the conclusion that the "expiration" date in question applies to the time when the construction work itself was to be completed and does not invalidate those other provisions of the agreement extending into the future.

■ Without assigning any error in respect thereto, the Sanitary District argues in its brief that there was no authority shown in the agent who executed the application for the permit in question for the Sanitary District to commit it to the removal of this sewer line. This is true. However, there was no allegation made by the Sanitary District in its answer that there was any lack of authority on the part

of this agent. We are dealing with a defense which must be raised affirmatively. City of Phoenix v. Linsenmeyer, 86 Ariz. 328, 346 P.2d 140 (1959). Moreover, the question of lack of authority was raised for the first time on appeal, and this is too late. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963).

But, even if the contentions of the Sanitary District as to this permit were to be upheld, this court believes that the judgment of the trial court was correct. The entire case of the Sanitary District is predicated upon the premise that if the permit in question expired on September 1, 1950, then there would be no agreement of any kind between the Sanitary District and the State insofar as this sewer is concerned. From this, the Sanitary District proceeds to the conclusion, without citation of pertinent authority, that it should be compensated for the cost of relocating its sewer line and/or that it does not have an obligation to move its sewer line when made necessary by highway construction.

The Sanitary District contends that its right to maintain the sewer upon the right-of-way in question is given to it by A.R.S. 36–1311 which reads as follows:

"A right of way in or across public property, highways or streets within a sanitary district is granted to the district whenever found by the board of directors to be necessary or convenient for performing any work authorized by this article."

Its rights under this statute are a statutory "easement" according to the appellant's brief, and it must be compensated for interference therewith.

The authorities seem to be overwhelmingly to the contrary.

The law has been spelled out in this state that a public utility has the duty of relocating its lines when such is made necessary by street improvements. Paradise Valley Water Company v. Hart, 96 Ariz. 361, 395 P.2d 716 (1964).

Insofar as the duty to relocate water and/or sewer lines is concerned, the case law establishes that a municipality is in no better position than a privately owned public utility. State ex rel. State Highway Commission v. Town of Grants, 66 N.M. 355, 348 P.2d 274 (1960); Travis-Williamson County Water Control and Imp. District No. 1 v. State, 359 S.W.2d 528 (Tex. Civ.App.1962); Brunswick and Topsham Water District v. W. H. Hinman Co., 153 Me. 173, 136 A.2d 722 (1957); City of San Antonio v. Bexar Metropolitan Water District, 309 S.W.2d 491 (Tex.Civ.App.1958); County of Contra Costa v. Central Contra Costa Sanitary District, 37 Cal.Rptr. 767 (1st Dis. Cal.App.1964); State v. Public Utility District No. 1 of Clark County, 55 Wash.2d 645, 349 P.2d 426 (1960); East Bay Municipal Utility District v. County of Contra Costa, 200 Cal.App.2d 477, 19 Cal.Rptr. 506 (1st Dis. Cal.1962); Public Water Supply District No. 2 of Jackson County v. State Highway Commission, 244 S.W.2d 4 (Mo.1951); Jackson County Public Water Supply District No. 1 v. State Highway Commission, 365 S.W.2d 553 (Mo.1963).

That the district has the right to use the highway right-of-way under A.R.S. 36–1311 the plaintiff does not question, but contends that this right is subordinate to the general power of the State Highway Commission to regulate the highways, as contained in A.R.S. 18–106, which reads in subsection 7 thereof:

"Exercise complete and exclusive control and jurisdiction of the state highways, and prescribe such rules and regulations to govern the use of state highways as it deems necessary for public safety and convenience, and to prevent the abuse and unauthorized use of the highways."

With this latter contention the court agrees. If the Sanitary District's right to use the highways to lay its lines were not subordinate to the regulatory power of the State Highway Commission, it would have the power to interfere with the primary purpose for which the right-of-way was acquired, the use by vehicular

**50**

traffic, and could interfere with the many uses made by other public agencies of the right-of-way. It would indeed be chaotic if some one public agency did not have the right to regulate the various uses that may rightfully be made of the highways.

In so exercising its function to exercise exclusive control over the state highways, the State Highway Commission is exercising the police power of the state as delegated to it. Paradise Valley Water Co. v. Hart, supra, State v. Marin Municipal Water Dist., 17 Cal.2d 699, 111 P.2d 651 (1941). That the state, through its authorized agency may generally regulate and direct the flow of vehicular traffic without making compensation therefor is well established. Rayburn v. State, 93 Ariz. 54, 378 P.2d 496 (1963). In this case, the flow of vehicular traffic is conflicting with the flow of sewerage and the Highway Commission, in its discretion, has determined that the flow of sewerage must give way.

There is no contention made that the plaintiff acted in a capricious unreasonable and/or discriminatory manner. These are the only limitations as recognized by the decisions cited above upon the power of the regulatory body to require relocation of utility lines placed in a public highway in order to make way for highway construction.

Case law appears to establish only one exception to the general rule that a public utility has no vested right in maintaining a water or a sewer line in any particular location in a public highway. This exception is where the line was there before the dedication of the street or the acquisition of the road by the public body making the road improvement. County of Contra Costa v. Central Contra Costa Sanitary District, 182 Cal.App.2d 176, 5 Cal. Rptr. 783 (1st Dis. 1960); Green v. Noble, 114 Ohio App. 321, 182 N.E.2d 569 (1961). In this case, it is clear that the plaintiff State of Arizona had previously acquired this right-of-way for highway purposes before the defendant Sanitary District built

its line therein and therefore the exception does not apply.

The next contention of the Sanitary District is that the State Highway Commission estopped itself from denying the right of the Sanitary District to maintain its sewer line where constructed by reason of the fact that the Highway Commission provided to the Sanitary District plans for the intersection in question at the time of such construction which did not show an underpass at this particular intersection. The Sanitary District contends that it constructed its line in accordance with the then plans of the Highway Department, and at a location required by the Highway Department. This location required substantial additional expense to the Sanitary District and therefore it argues that the Highway Department is estopped to change those plans without compensating the Sanitary District for the relocation of any lines required by such change.

Ordinarily, of course, the state and/or its agencies and subdivisions cannot be estopped from asserting any defenses or claims. Arizona Tax Commission v. Dairy & Consumers Cooperative Ass'n, 70 Ariz. 7, 215 P.2d 235 (1950). However, Sanitary District contends that there is an exception to the general rule when the controversy is between two public agencies, citing State ex rel. Heintze v. County of Adams, 162 Neb. 127, 75 N.W.2d 539, 549 (1956), and other authority.

This court does not believe it necessary to decide whether the state may estop itself as to another public agency, because it does not believe that the elements of estoppel are present in this case. The facts that the Highway Department, not for any remuneration whatsoever, but merely in pursuance of its duties to regulate the State Highways, provided to the Sanitary District in 1949 its then existing plans for the construction of this intersection and required the sewer line to be constructed in a certain location in its right-of-way would not be sufficient to cause the Sanitary District to believe that it would never be

necessary to move its sewer line. Our Supreme Court said in Knight v. Rice, 83 Ariz. 379, 321 P.2d 1037 (1958):

"Estoppel is an affirmative defense; the party, relying thereon must plead the same and has the burden of showing by clear and satisfactory proof that all the elements are present, and the acts relied upon to create it must be absolute and unequivocal."

There is no evidence in this case that any agent of the State informed the Sanitary District that the plans supplied would not be changed. Ten years after the plans were submitted the same were changed.

The assistant highway engineer called by the defendant Sanitary District testified:

" * * * Whenever a permit is issued, why, it is just a matter of allowing them to occupy a space on the right of way, but for public purposes, as a rule, but we don't—we can't say that plans won't be changed from one year to another or that certain developments will come about, but—"

This court agrees. As was said in County of Contra Costa v. Central Contra Costa Sanitary District, Cal.App., 37 Cal.Rptr. 767 at 769:

"Although the cost has been made necessary by the need for changing the road, it could have been anticipated by the district that changes might be required over the years."

The third contention of the Sanitary District, that the court should have determined which public agency has the responsibility for the relocation of the line in question, is fairly well answered by the authorities cited above holding that the power to order relocation of sewer lines on highway right-of-ways is an exercise of the police power.

The State Highway Department has no statutory duty to provide sewerage service. This is a function of one or both of the defendants. Which of the defendants shall pay for the relocation will presumably be determined when the pending crossclaim filed by the defendant Sanitary District against the defendant City of Tucson is determined. The trial of this claim has been severed from the issues between the plaintiff and these defendants and will be determined separately. The complaint in this action asks for the "removal" of the sewer line in those portions of it which interfere with the highway construction at the intersection in question. Trial stipulations relied upon by the Sanitary District do not extend the issues. There was no evidence taken as to which of the defendants had a duty to relocate this line. The court would have been going beyond the issues being tried if it had taken upon itself to determine which of the defendants was to rebuild the line in question. Green v. Noble, (Ohio 1961) supra.

For the reasons hereinbefore stated, this court hereby orders that the judgment of the plaintiff against the defendant City of Tucson be reversed, and that the decision of the lower court granting judgment in favor of the plaintiff and against the defendant Sanitary District for the removal of the sewer line in question be affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.