469 P.2d 114

The STATE of Arizona, ex rel., Justin HERMAN, Director, Arizona Highway Department, Appellant,

v.

ELECTRICAL DISTRICT NO. 2 OF PINAL COUNTY, Arizona, a body corporate, Appellee.

No. 2 CA–CIV 796.

Court of Appeals of Arizona, Division 2.

May 8, 1970.

Rehearing Denied June 9, 1970.

Review Granted July 7, 1970.

---

Gary K. Nelson, Atty. Gen., by Robert V. Kerrick and Stanley Z. Goodfarb, Asst. Attys. Gen., Phoenix, for appellant.

Lewis, Roca, Beauchamp & Linton, by John P. Frank, Phoenix, for appellee.

HOWARD, Chief Judge.

The appellant, hereinafter referred to as the "State", pursuant to a resolution of the Arizona Highway Commission improving State Highway 287, filed an action against the appellee, hereinafter referred to as the "District", to require the District to remove, at its own expense, its transmission lines and poles from their existing location in the right-of-way of State Highway 287.[1]

The District defended the action on the following grounds: (1) A.R.S. § 30–549, gave it a vested property right which could be taken only upon the payment of just compensation; (2) its right in the road was senior to that of the State; and (3) it had easements in the new right-of-way.

The trial court, making findings of fact and conclusions of law, agreed with the District's contention that it had senior rights since its facilities were located in the road before it was legally established as a public road. Judgment in favor of the District in the amount stipulated to by the parties as the cost of relocation was entered, and the State appealed. The State challenges the trial court's determination that the District's "seniority" prevented its being charged with the cost of relocation. We agree.

The trial court expressly found, inter alia, that the District was organized in 1923 pursuant to § 1, Ch. 7, of The Laws of 1923, the forerunner of A.R.S. § 30–501 et seq., that several attempts were made prior to 1927 to establish a legal road 66 feet wide but that no legal road was in fact created until passage of the curative statute of 1927, § 3, Ch. 2, sub. ch. 1, L. '27. 4th. S.S.[2]

It also made the following findings: (1) That the District constructed its lines in the area in question by "license or permission of adjoining landowners" and under the authority of § 23, Ch. 7, L. '23 (3453 R.C. '28) now A.R.S. § 30–549;[3] (2) that subsequent to the construction of the power line the District secured easements from abutting landowners to put electrical lines upon property adjacent to the road; (3) that the easements were acquired by the District at various times from 1926 to 1963; (4) that only one[4] was acquired before the 1927 curative statute; and (5) that they were not recorded until 1962.

---

1. Transmission line was located 26 to 28 feet south, parallel to center line.

2. This law, almost identical to A.R.S. § 18–152, provided:
   "All highways heretofore constructed, laid out, opened or established as public highways by the territory or state, or by any board of supervisors or legal subdivision of the state, and which have been used continuously by the public as thoroughfares for free travel and passage for two years, or more, regardless of any error, defect or omission in the proceeding to establish such highways, or in the recording of such proceedings, and all highways which shall be hereafter established pursuant to law, are hereby declared to be public highways * * * within the limits of an incorporated city or town having a population of more than twenty-five hundred shall come under the provisions of this chapter except as specifically provided for herein."

3. § 23, Ch. 7, L. '23, provided in part, as follows:
   "Any district organized under this Act shall have the use of and the right as expressly granted to them to use the public highways and roads, streets and alleys in or outside their district which is needed to bring power into the district but this use shall be under such reasonable restrictions as may be made by the board of supervisors of the counties in which the same are located and the city councils in their respective jurisdictions and in case of controversy over the same the dispute shall be submitted to and decided by the Corporation Commission of Arizona but the right herein must be preserved to the district with necessary limitations only."

4. This one easement did not concern the road in question.

The following conclusions of law were made:

> "17. Pinal County did not perfect its right to the Casa Grande-Florence Highway including the stretch here involved, until the curative statute of 1927, A.R.S. § 18–152. The location of the Electrical District's line is senior in time to the legal establishment of the road and therefore, and solely upon the facts of this particular case, the Electrical District is entitled to be compensated for its removal.
>
> \* \* \* \* \* \*
>
> 19. In the light of the express language of the decision in Sanitary District No. 1 v. State ex rel. Willey, 1 Ariz.App. 45, 399 P.2d 179 (1965), which says that the only exception to the general rule that a public utility has no vested right in maintaining a line in a public highway is where the construction of the line is senior in time to the dedication of the road, the court concludes that the District has no vested right under the language of A.R.S. § 30–549.
>
> 20. The decision of the Court rests upon the facts of this case as establishing the use of the roadway by the Electrical District prior to the perfection of any legal right by the County, and does not rest upon the easements, or the taking of easements, as to which no additional recovery is allowed."

██ We agree with the trial court that the District acquired no vested right under the predecessor counterpart of A.R.S. § 30–549. Charters, franchises, statutory grants and permits granting the use of public ways to utility locations are subservient, either expressly or by implication, to the police power. The relocation of utility facilities in public ways are at utility expense, unless abrogated by the clear im-port of the language used in a particular statute. 4 Nichols on Eminent Domain, 3rd Ed. § 15.22; State Highway Commission v. Clackamas Water District, 247 Or. 216, 428 P.2d 395 (1967); Southern California Gas Company v. City of Los Angeles, 50 Cal. 2d 713, 329 P.2d 289 (1958). The District, however, contends that the language of the statute clearly imports a legislative intent to give electrical districts a right *in perpetuo* to maintain facilities and, therefore, the burden of the relocation expense must be borne by the State.

██ Whether the right contended for by the District could be conferred is arguable. Public ways are held by governmental bodies and their political subdivisions in trust for the use of the public. Moeur v. City of Tempe, 3 Ariz.App. 196, 412 P.2d 878 (1966). For this reason, governmental bodies can grant no more than a permissive user of a public right-of-way. State ex rel. Rich v. Idaho Power Company, 81 Idaho 487, 346 P.2d 596 (1959). We find no clear statutory mandate shifting the burden of the cost of relocation of electrical transmission facilities to the State and, therefore, cannot accept the District's argument. See State ex rel. State Highway Commission v. Town of Grants, 66 N.M. 355, 348 P.2d 274 (1960).

██ The District urges application of the principle that long continued administrative construction of a statute by the officers charged with its enforcement is entitled to considerable weight in its interpretation.[5] It claims the evidence indicates that the State Highway Department had been construing A.R.S. § 30–549 as requiring the State to bear the burden of relocation costs.[6] Evidence as to even prior instances of the State's payment of such costs was presented. There was no showing, however, that the circumstances

5. Construction placed on a statute by the executive body which administers it, if acquiesced in for a long period of time will not be disturbed unless such construction is manifestly erroneous. Industrial Commission v. Harbor Insurance Co., 104 Ariz. 73, 449 P.2d 1 (1968).

6. Opinions of the Attorney General to the contrary, i. e., that the Arizona Highway Department is not obligated to reimburse for relocation of public utilities placed in the right-of-way, were also admitted into evidence.

in the seven other cases were similar to the instant situation. In these earlier situations, there might well have been some valid basis for seniority. Furthermore, there was also evidence that on at least one occasion, the State required the utility to relocate at its own expense. We, therefore, decline to accept the rule of statutory construction urged by the District.

■ The trial court found that the subject road was not legally established until 1927. There being sufficient evidence to support this finding, we accept it, as is our duty. Such finding, therefore, supports the trial court's conclusion that the District's transmission facilities were located on the land before it was acquired by the County. An exception to the general rule requiring the expense of relocation to be borne by a utility is recognized when the installation of the facilities occurred prior to the establishment of the road. Sanitary District No. 1 of Pima County v. State ex rel. Willey, 1 Ariz.App. 45, 399 P.2d 179 (1965); County of Contra Costa v. Central Contra Costa Sanitary District, 182 Cal. App.2d 176, 5 Cal.Rptr. 783 (1960); Green v. Noble, 114 Ohio App. 321, 182 N.E.2d 569 (1961); Magnolia Pipe Line Co. v. City of Tyler, 348 S.W.2d 537 (Tex.1961); State of Tennessee v. United States, 256 F.2d 244 (6th Cir. 1958). In all of these cases recognizing the exception to the general rule, however, we note that the installation of the facilities was pursuant to a privately granted easement.

■ Although we find nothing in the record supportive thereof, the trial court found as a fact that the District constructed its facilities "by license or permission of adjoining landowners." The description "adjoining landowners" is ambiguous on its face, and we presume that the trial court intended only "landowners". Assuming arguendo that the conduct of the land-owners evidenced an intent on their part to create a license, see 25 Am.Jur.2d Easements and Licenses § 124, no interest in the land is thereby crated and it is terminable at will. Id. § 123.

■ The District, however, contends that the license became irrevocable, i. e., where the licensee has incurred expenses in making valuable improvements to the property, the license becomes irrevocable by execution. We do not believe the executed license doctrine is apposite. See Anchor Stone and Materials Co. v. Carlin, 436 P.2d 650 (Okl.1968); Slemons v. Southern California Edison Co., 252 Cal.App.2d 1022, 60 Cal.Rptr. 785 (1967). In *Anchor Stone*, supra, the plaintiff's predecessor in title gave the defendant permission to lay a pipe line across his property. The plaintiff sought an order requiring the defendant to remove its pipe line and the trial court granted the requested relief. On appeal, the defendant contended that the license had become executed, hence irrevocable, because it had incurred expense in laying the pipe line, resulting in improvement of property. The Oklahoma Supreme Court, in affirming the trial court, stated:

"It is our opinion that the improvement made is not such as to bring the situation herein within the above quoted language [7] * * *. In our view, the quoted language contemplates a permanent improvement, inuring to the benefit of the landowner, and which will continue to exist and benefit such landowner after the termination of the license. In the instant case it is this very 'improvement' which plaintiff seeks to have removed from his property, and if the license is revoked and the pipe line removed, no improvement will remain which will continue to benefit plaintiff." 436 P.2d at 653.

7. The quoted language from Murduck v. City of Blackwell, 198 Okl. 171, 176 P.2d 1002, quoting from Shaw v. Proffitt, 57 Or. 192, 110 P. 1092:

"'An express oral license, becoming irrevocable by execution, *by expenditures in permanent improvements in reliance thereon, inuring to the benefit of the licensor*, if relating to the use or occupation of real estate, becomes an easement.'"

We hold that the District had no prior "right" to maintain its transmission facilities where they were located, and its permissive user could be revoked by the governmental authority.

We are of the opinion, however, that remand is required to resolve an unadjudicated issue.

As noted above, the trial court expressly found that the District had secured easements but concluded that its decision did not rest upon the easements or the taking thereof. Prior to trial, the parties entered into a stipulation which included the following:

"2. The cost of relocating the lines will be $16,172.09 and that amount shall be the damages paid to the defendant by the State of Arizona for the relocation, plus 6% per annum from the time of completion of the work until paid, if at the trial of this proceeding a verdict is rendered in favor of the defendant.

3. Defendant contends it has easements for location of its power lines within the new right-of-way the State is establishing along the Casa Grande-La Palma Highway which pre-exists any interest the State has in the property and which the State has not recognized either by including such real property interests in the complaint filed in this proceeding or by paying defendant for the taking of such interests. The damages stipulation in paragraph 2 above is not intended to limit or determine in any way the right of defendant in such easements, and any damages awarded defendant by the trier of fact will be in addition to damages stipulated there.

4. Defendants have submitted to plaintiff copies of easements from the following grantees to defendant as grantor, and while plaintiff does not agree to the legal effect of the easements or the right of defendant thereunder, it is agreed that the easements have been secured by defendant and such will be admitted into evidence without further foundation or proof:

[Names of grantors and dates of grants are set forth]."

Our examination of the pleadings, stipulation and pretrial memorandum of the District reveals that the District claimed compensation for the State's acquisition of its alleged property interest in the land acquired for the new right-of-way, namely, its easements. We have examined the "easement grants" which are identical with the exception of the dates, grantors, and legal description of the property. Each document recites the conveyance and grant of a right-of-way for the construction, operation and maintenance of an electrical transmission line for the carrying and transmission of power for use in irrigation or other lawful purposes, including a telephone line or lines and other useful equipment over and across specifically described real property. Following the property description, is the following:

"It is expressly understood and agreed that the foregoing description indicates approximately the location of said right of way, but once the said transmission line and equipment is constructed the location of the same for all time shall determine the description of the right of way herein granted."

■ On appeal, the State contends that these easement grants appertain to the location of the District facilities prior to the requested relocation. These grants on their face, however, are susceptible of a contrary interpretation—conveyance of an easement for a future location. The trial court, in view of its finding in favor of the District on the cost of relocation, apparently found it unnecessary to adjudicate this "taking" issue. Since ascertainment of the grantors' intentions is not manifest from a reading of these documents, resort to extrinsic evidence is necessary. Brand v. Elledge, 101 Ariz. 352, 419 P.2d 531 (1966); Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686 (1967). The evidentiary posture of this case, therefore, requires remand to the trial court for determination of the District's

**228**

claim as to the taking and/or impairment of its claimed property rights.

For the reasons herein stated, the judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

HATHAWAY, J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this decision.