**MEADOWBROOK-FAIRVIEW METROPOLITAN DISTRICT; Meadowbrook Water District; Willowbrook Water and Sanitation District; Southwest Metropolitan Water and Sanitation District; Platte Canyon Water and Sanitation District; and Bear Creek Water and Sanitation District, a quasi-municipal corporation, Petitioners,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, a body politic and corporate, Respondent.**

No. 94SC677.

Supreme Court of Colorado,
En Banc.

Feb. 12, 1996.

Donald D. Vogt, Morrison, for Petitioners Meadowbrook–Fairview Metropolitan District, Meadowbrook Water District, and Willowbrook Water and Sanitation District.

Flynn & Flynn, Timothy J. Flynn, Englewood, for Petitioners Southwest Metropolitan Water and Sanitation District, and Platte Canyon Water and Sanitation District.

Sims & Boster, Michael D. Boster, Denver, for Petitioner Bear Creek Water and Sanitation District.

Frank J. Hutfless, Jefferson County Attorney, William A. Tuthill III, Assistant County Attorney, Golden, for Respondent.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Board of County Commissioners v. Southwest Metropolitan Water and Sanitation District*, 895 P.2d 1073 (Colo.App.1994), affirming the trial court's entry of summary judgment in favor of the Board of County Commissioners of Jefferson County ("Jefferson County"). We affirm the decision of the court of appeals.

## I.

Petitioners, Southwest Metropolitan Water and Sanitation District ("Southwest") and Platte Canyon Water and Sanitation District ("Platte Canyon"), have utility lines located in public rights-of-way along streets located in Jefferson County.[1] Jefferson County has decided to embark upon two road improvement projects which will require relocation of the utility lines due to alterations in the grade elevation of the roads.

Consequently, Jefferson County has demanded that Southwest either relocate its utility lines or bear the cost of having Jefferson County make arrangements for relocation. Southwest refused, and Jefferson County initiated this action by seeking a declaratory judgment from the district court that Southwest was required, pursuant to common-law rule, to bear the cost of relocating its utility lines. Soon thereafter, Platte Canyon, also affected by the road improvement projects, filed an action in the district court seeking a declaration that Platte Canyon should not be required to bear the cost of relocating its utility lines.

The trial court consolidated the actions and granted summary judgment in favor of Jefferson County. The trial court relied on *City and County of Denver v. Mountain States Telephone and Telegraph Co.*, 754 P.2d 1172 (Colo.1988), to hold that Southwest and Platte Canyon would have to bear the costs of relocating their utility lines. The court of appeals affirmed, holding that *Mountain States* was dispositive in the instant case, despite the fact that *Mountain States* involved a privately-owned public utility, while the petitioners in the instant case are all public entities.

## II.

The petitioners assert that the court of appeals erred by relying on *Mountain States* to hold that a special district could be required to bear the relocation costs that arise from a county's road improvement project. The respondents maintain that our holding in *Mountain States* is dispositive of the instant case. We agree with the respondents.

In *Mountain States*, we held that "a municipality may compel public utilities to relocate their facilities from the public right-of-way at their own cost whenever such relocation is necessitated by the municipality's reasonable exercise of police power to regulate the health, safety, or welfare of its citizens." *Mountain States*, 754 P.2d at 1176. In that case, the Denver Department of Public Works ("Denver") was engaged in sewer line

---

1. Petitioners Meadowbrook–Fairview Metropolitan District, Meadowbrook Water District, Willowbrook Water and Sanitation District, Bear Creek Water and Sanitation District, Fruitdale Sanitation District, and Valley Water District do not have utility lines that will be affected by the Board's current roadway improvement project. The trial court granted these districts leave to intervene because all these districts have utility lines in public rights-of-way and the outcome of this case has the potential to adversely affect their interests.

construction within the City and County of Denver. The construction required Mountain States Telephone and Telegraph Company ("Mountain States") to relocate certain of its underground telephone facilities. Mountain States filed an action against Denver in district court, alleging that Denver owed Mountain States the cost of relocating its buried telephone cables.

The trial court granted summary judgment in favor of Denver. The court of appeals reversed, holding that because Denver's actions regarding the sewer line construction were proprietary, rather than governmental, Denver was liable for the cost of relocating Mountain States' facilities. We reversed the court of appeals. After first rejecting any governmental/proprietary distinction, we went on to hold:

> In the absence of a contract, franchise agreement, or statute to the contrary, we believe the better rule is to require a utility to pay the cost of relocating its facilities from a public street whenever the municipality requires it in the exercise of its police power to protect the public health, safety, or convenience.

*Id.* We stated that because the sewer construction required that Mountain States relocate its telephone lines, and the sewer construction furthered the health and welfare of Denver's citizens, Mountain States was required to bear the cost of relocating its facilities.

*Mountain States* directly controls the instant issue. We find the petitioners' distinctions between a city and a county and between a public and a private utility to be of little consequence here. Nowhere in *Mountain States* did we rely upon Mountain States' status as a private, rather than a public, entity to apply the common-law rule. In *Mountain States,* we cited our decision in *Moffat v. Denver,* 57 Colo. 473, 143 P. 577 (1914), as authority for the common-law rule we reaffirm today. The *Moffat* court explained the justification for the rule as follows:

> The prime purpose of a street is to provide a way for the use of the people at large for travel on foot and in ordinary vehicles. The power to grade streets and construct subways for the safety and convenience of the public is vested in the city authorities.

*Id.* at 477–78, 143 P. at 578.

Thus, the common-law rule is based on the recognition that the primary purpose of the right-of-way is for the use of vehicular traffic. While we acknowledge that the right-of-way may be put to other valuable uses by both public and private entities, "it would indeed be chaotic if some one public agency did not have the right to regulate the various uses that may rightfully be made of the highways." *Sanitary Dist. No. 1 of Pima County v. State,* 1 Ariz.App. 45, 399 P.2d 179, 184 (1965). The common-law rule thus makes sense whether applied to a dispute between a public and private entity, or two public entities.[2]

■■■ We also find the petitioners' contention that the common-law rule is somehow inapposite because of the respondent's status here as a county, rather than a municipality, to be without merit. Counties, as well as municipalities are "instruments of the state, created to carry out the will of the state." *Enger v. Walker Field, Colorado Public Airport Auth.,* 181 Colo. 253, 260, 508 P.2d 1245, 1248 (1973). Counties have, as do municipalities, such police powers as are granted to them by the Colorado Constitution or delegated to them by the General Assembly. *Beaver Meadows v. Board of County Comm'rs,* 709 P.2d 928, 932 (Colo.1985). Moreover, such a delegation of power confers all implied powers that are reasonably necessary to carry out the express grant. *Id.*

2. Many jurisdictions have applied the common-law rule in disputes between two public entities and have ruled that the public utility was required to bear the costs of relocating its equipment when necessitated by road construction performed by a state entity. *E.g., Pima County,* 399 P.2d at 183; *East Bay Mun. Util. Dist. v.* *Richmond Redevelopment Agency,* 93 Cal.App.3d 346, 155 Cal.Rptr. 636, 638–39 (1979); *State Highway Comm'n v. Clackamas Water Dist.,* 247 Or. 216, 428 P.2d 395, 396–97 (1967); *Benbrook Water and Sewer Auth. v. City of Benbrook,* 653 S.W.2d 320, 321, 324 (Tex.Ct.App.1983).

Jefferson County clearly has the statutory authority to "lay out, alter, or discontinue any road running into or through such county, and also to perform such other duties respecting roads as may be required by law." § 30–11–107(1)(h), 12A C.R.S. (1986). Jefferson County thus has the corresponding power to require relocation of the petitioners' utility line, as such is reasonably necessary to carry out its expressly delegated power to engage in road improvement projects. The only question is to whom the cost of such relocation must be delegated, and that question is answered by the common-law rule reaffirmed by this court in *Mountain States:* A utility must pay the cost of relocating its facilities from a public street whenever the public entity possessing police power over the right-of-way requires such relocation in the reasonable exercise of its police power in order to protect the public health, safety, or convenience.[3]

### III.

Our holding in *Mountain States* is therefore dispositive of the case at bar. The distinctions urged by the petitioners between that case and the present case are peripheral, and do not affect the underlying reasoning of the common-law rule. We thus hold that the common-law rule dictates that the petitioners must bear the cost of the relocation of their utility lines as necessitated by Jefferson County's road improvement project.[4]

**J.D.C., Petitioner,**

v.

---

3. The petitioners urge us to engage in a balancing of the equities of the parties in order to ascertain which entity should bear the cost of relocating the petitioners' utility lines. We believe that such an inquiry is appropriately within the province of the legislature, rather than this court.

4. We also granted certiorari on the following issue:
   Whether the court of appeals erred in holding that the specific police powers granted to a county are superior to those granted to the special districts.

A careful reading of the court of appeals' two-page opinion yields the conclusion that the court of appeals made no such holding. The holding of the court of appeals rests solely on its conclusion that "the *Mountain States* rule is not dependent on the distinction urged by the districts and that rule is therefore dispositive here." *Board of County Comm'rs,* 895 P.2d at 1075. Nowhere in the court of appeals' opinion is the above issue identified by the petitioners addressed or decided. This issue is thus not properly before us, and we need not consider it.