Ernie DILL and Julie Dill, Plaintiffs–Appellants,

v.

**BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY, Charles R. Covington, Harvey Wann, and Cherry Seymour, as Members of the Board, Defendants–Appellees.**

No. 95CA1592.

Colorado Court of Appeals, Div. IV.

Sept. 5, 1996.

Rehearing Denied Oct. 10, 1996.

810

Gablehouse & Epel, Joshua B. Epel, Karina M. Thomas, Denver, for Plaintiffs–Appellants.

Robert J. Safranek, Limon, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

Plaintiffs, Ernie and Julie Dill, brought this action pursuant to C.R.C.P. 106(a)(4) for judicial review and for injunctive and declaratory relief concerning actions taken by defendant, Board of County Commissioners of Lincoln County (Board), in adopting two resolutions regarding solid waste disposal. The trial court determined the resolutions to be valid legislative action by the Board and dismissed plaintiffs' other requests for relief. On grounds somewhat different from those of the trial court, we affirm.

In early 1994, plaintiffs notified the Board of their intention to obtain a Certificate of Designation (CD) to build and operate a commercial sanitary landfill. In May 1994, following several citizen complaints about the proposed landfill but before plaintiffs submitted their CD application, the Board published a notice of public hearing to consider a moratorium on all new landfill projects. In June 1994, the Board adopted Resolution 294, which designated the county's own landfill as the "exclusive solid waste landfill site" for the county. After a public hearing, the Board adopted Resolution 297, imposing a two-year moratorium on issuance of CDs. The purpose of the moratorium was to "adopt[ ] comprehensive rules, regulations and guidelines for the siting and operation of solid waste landfills within the County."

Plaintiffs filed a complaint seeking review of the Board's actions, arguing that adoption of the two resolutions was beyond its authority, as well as arbitrary and capricious, and that the resolutions interfered with plaintiffs' ability to participate in the statutorily established CD designation process. Plaintiffs also argued that Resolution 294 created a monopoly in derogation of federal and state antitrust law, and requested that the Board be enjoined from enforcing the resolution.

The trial court dismissed plaintiffs' claims, ruling that adoption of the resolutions was legislative, rather than quasi-judicial, and, therefore, not subject to review as arbitrary and capricious under C.R.C.P. 106(a)(4). The court further ruled that the moratorium was properly adopted under implied statutory authority. In addition, it ruled that since plaintiffs had not as yet filed a CD application, they lacked standing to contest the Board's actions based on state and federal antitrust law. This appeal followed.

I.

Plaintiffs first contend that the trial court erred in determining that enactment of the resolutions was a legislative rather than quasi-judicial action. Consequently, plaintiffs argue, the court erred in determining that the actions were not subject to judicial review under the arbitrary and capricious standard of C.R.C.P. 106(a)(4). We disagree.

C.R.C.P. 106(a)(4) provides that relief is available in district courts:

Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceed-

ed its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law....

Distinguishing between quasi-judicial and legislative action, the supreme court has stated that legislative action "is prospective in nature, is of general application, and requires the balancing of questions of judgment and discretion." *City & County of Denver v. Eggert,* 647 P.2d 216, 222 (Colo.1982); *see also Landmark Land Co. v. City & County of Denver,* 728 P.2d 1281 (Colo.1986). Moreover, the essence of a legislative decision is in the "nature of the decision itself and the process by which that decision is reached." *Cherry Hills Resort Development Co. v. City of Cherry Hills Village,* 757 P.2d 622, 626 (Colo.1988).

■ An action is quasi-judicial if the governmental decision is likely to affect adversely the protected interests of specific individuals by application of preexisting legal standards or policy considerations to facts presented to the governmental body. In contrast, legislation "affects the rights of individuals in the abstract and must be applied in a further proceeding before the legal position of any particular individual will be definitely touched by it." *Colorado Ground Water Commission v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 217 (Colo.1996).

■ Here, if we accept plaintiffs' allegations as true, their participation in the CD process may be affected by both resolutions. A further proceeding, however, would be required before either resolution would specifically affect the legal position of plaintiffs or any other potential landfill developer. *Cf. City of Aspen v. Marshall,* 912 P.2d 56 (Colo. 1996) (incomplete permit application creates no vested right of use); *Williams v. City of Central,* 907 P.2d 701 (Colo.App.1995) (temporary moratorium did not effect taking of property).

Further, while plaintiffs assert that it was their interest in developing a commercial landfill that originally prompted the Board's actions, by their terms, both resolutions had a broad impact, *i.e.,* they were applicable to all landfills, all land in the county, and all potential disposers of waste in Lincoln Coun-

ty. *See Jafay v. Board of County Commissioners,* 848 P.2d 892 (Colo.1993).

Moreover, the resolutions were prospective in nature—both by their terms and because, at the time of enactment, no CD applications had been submitted to which they might have been applied. Thus, despite the fact that the Board provided notice and public hearings before adopting the moratorium, factors which can be indicative of a quasi-judicial action, the Board's actions were quasi-legislative. *See Jafay v. Board of County Commissioners, supra.* Accordingly, plaintiffs are not entitled to judicial review of either resolution under the arbitrary and capricious standard of C.R.C.P. 106(a)(4).

II.

In addition to challenging the specific actions of the Board as arbitrary and capricious, plaintiffs also challenge the Board's authority to adopt a moratorium. Although it is not precisely clear, this claim for relief appears to be a request for a declaratory judgment on the validity of Resolution 297. Accordingly, we review it as such, *see Bruce v. School District No. 60,* 687 P.2d 509 (Colo. App.1984), and agree with the trial court's determination that the Board was authorized to enact a moratorium.

■ A county has no inherent sovereign authority, but has those powers expressly granted by the Colorado constitution and statutes, and such incidental powers as are "reasonably necessary" to execute the expressly delegated powers of the Board. *See Orchard City v. Board of Delta County Commissioners,* 751 P.2d 1003 (Colo.1988); *see also Meadowbrook–Fairview Metropolitan District v. Board of County Commissioners,* 910 P.2d 681 (Colo.1996) (counties have such police powers as granted by constitution or delegated by General Assembly).

There is no claim here of power to adopt a moratorium pursuant to an express constitutional grant or statutory authorization. Therefore, adoption of Resolution 297 was a valid exercise of authority only if a moratorium on approval of CD applications can be inferred to be reasonably necessary for the Board to execute its express powers regard-

ing solid waste management. *See Dollaghan v. Boulder County,* 749 P.2d 444 (Colo.App. 1987); *cf. Williams v. City of Central, supra,* 907 P.2d at 706 ("Temporary moratoria . . . generally are upheld so long as the duration is reasonable under the circumstances and the enactment was made in good faith without discrimination.").

Here, authority to adopt a moratorium may be inferred from both the Solid Wastes Disposal Sites and Facilities statute (Solid Wastes Act), § 30–20–100.5, et seq., C.R.S. (1986 Repl.Vol. 12A), and the Areas of State Interest Act, § 24–65.1–101, et seq., C.R.S. (1988 Repl.Vol. 10B).

First, the Solid Wastes Act provides a statutory basis for regulation of solid waste disposal sites within Lincoln County. Although the statute does not explicitly authorize a moratorium, the authority to delay approval of permits while guidelines and regulations are being developed is reasonably incidental to this power to regulate.

Specifically, the Solid Wastes Act defines the county's authority to regulate the number, location, and type of disposal sites. The act's legislative declaration states that solid waste is a matter of state and local concern and that both state and local governments "must play important roles in the management of solid waste." Sections 30–20–100.5(1)(a) and 30–20–100.5(1)(d)(I), C.R.S. (1996 Cum.Supp.). Further:

Local governments and their citizens should be encouraged to work toward consensus concerning their solid waste disposal needs and concerning the types and numbers of solid wastes sites and facilities necessary or desirable in their areas.

Section 30–20–100.5(1)(d)(II), C.R.S. (1996 Cum.Supp.).

Moreover, prior to issuance of a CD, the "governing body having jurisdiction [over a potential waste site] shall . . . be satisfied that the proposed solid wastes disposal site and facility conforms to the local government's comprehensive land use plan and zoning restrictions." Section 30–20–104(3)(a), C.R.S. (1996 Cum.Supp.); *see also* § 30–20–104(1), C.R.S. (1996 Cum.Supp.) (county has authority to evaluate applications for pro-

posed solid wastes disposal sites and facilities); § 30–10–104(2), C.R.S. (1996 Cum. Supp.) (county can approve or disapprove applications for CDs, subject to judicial review). The factors a county must consider in evaluating a CD application include the location of the site, type of processing to be used, effects on surrounding property, as well as Colorado Department of Public Health and Environment standards and operating procedures. *See* § 30–20–104(1).

Thus, the Solid Wastes Act provides a local government with authority to evaluate permits on the basis of its own regulations, as well as to determine the number and type of facilities within its jurisdiction. To authorize a local government to regulate solid waste in this manner but without implied authority to adopt or amend regulations for that purpose would be to ignore the independent role of local governments in the review process. The ability to delay approval of permit applications by way of a moratorium for a reasonable time such that regulations can be revised may also be reasonably necessary to discharge the Board's explicit statutory authority under the Solid Wastes Act.

Similarly, the Areas of State Interest Act authorizes local governments to declare certain activities and areas as "of state and local interest," *see* § 24–65.1–401, C.R.S. (1988 Repl.Vol. 10B), and requires that the local government "develop guidelines for administration of the designated matters of state interest." Section 24–65.1–402(1), C.R.S. (1988 Repl.Vol. 10B); *see also* § 24–65.1–204(2), C.R.S. (1988 Repl.Vol. 10B) (criteria for developing solid waste disposal sites).

Section 24–65.1–404, C.R.S. (1988 Repl.Vol. 10B) provides for notice and a hearing before an area or activity is designated and guidelines promulgated. Section 24–65.1–404(3), C.R.S. (1988 Repl.Vol. 10B) provides that the local government may, within 30 days of the public hearing, adopt, modify, or reject the particular designation and guidelines, but "in any case, [the local government] shall have the duty to designate any matter which has been finally determined to be a matter of state interest and adopt guidelines for the administration thereof." *See also City & County of Denver v. Board of County Com-*

*missioners,* 782 P.2d 753 (Colo.1989). Section 24–65.1–406, C.R.S. (1988 Repl.Vol. 10B) sets time limits for the review and approval of proposed guidelines by the Colorado land use commission, and § 24–65.1–404(4), C.R.S. (1988 Repl.Vol. 10B) provides for a moratorium on development between the time a matter of state interest has been designated and guidelines for such area or activity are "finally determined."

Here, pursuant to regulations, Lincoln County designated site selection and development of solid wastes disposal sites as a matter of state interest in March 1982, and adopted regulations pertaining to solid and hazardous waste in November 1982. Plaintiffs' contention notwithstanding, the Areas of State Interest Act does not require that an area or activity be redesignated each time a local government finds it necessary to revise its applicable regulations. Indeed, the act does not explicitly provide for revision of guidelines, but a jurisdiction "may adopt regulations interpreting and applying its adopted guidelines in relation to specific developments in areas of state interest and to specific activities of state interest." Section 24–65.1–402(2), C.R.S. (1988 Repl.Vol. 10B).

Consequently, it is reasonable to infer that the Board had authority pursuant to § 24–65.1–101, et seq., to revise its regulations with regard to solid waste disposal. Further, as discussed in regard to the Solid Wastes Act, a moratorium on approval of permit applications for a reasonable time such that regulations can be updated may also be necessary to discharge the Board's explicit statutory authority under the Areas of State Interest Act.

Furthermore, we note that courts which have addressed this issue have generally found implied authority to enact moratoria under a jurisdiction's general police power authority, despite a lack of explicit statutory authority. *Cf. State ex rel. Diehl Co. v. City of Helena,* 181 Mont. 306, 593 P.2d 458 (1979) (implied in power to restrict use of land as exercise of police power is authority to adopt reasonable moratoria); *Brazos Land, Inc. v. Board of County Commissioners,* 115 N.M. 168, 848 P.2d 1095 (App.1993) (moratorium for promulgating more stringent subdivision waste disposal requirements a valid exercise of board's police power and its express and implied authority where such requirements and restrictions reasonably advanced a legitimate state interest in the safety and health of the inhabitants); *Sun Ridge Development, Inc. v. City of Cheyenne,* 787 P.2d 583 (Wy. 1990) (moratorium was a reasonable response to drainage problems and a valid exercise of police powers); *see generally* I A. Rathkopf, *The Law of Zoning & Planning,* § 11.03[1] (1996).

## III.

Plaintiffs next contend that the trial court erred in dismissing for lack of standing their request that the Board be enjoined from enforcing Resolution 294, which designated the county's own landfill as the "exclusive solid waste landfill site" for the county. Plaintiffs essentially argue that the resolution is invalid as written because it violates the Sherman Antitrust Act, the Colorado Antitrust Act of 1992, and the Commerce Clause of the United States Constitution.

Resolution 294 provides that:

[P]ursuant to CRS 30–20–107, the Lincoln County Solid Waste Landfill Site ... is hereby declared to be and is the exclusive solid waste landfill site for disposal of solid waste within Lincoln County.

Section 30–20–107, C.R.S. (1996 Cum. Supp.) provides that:

The governing body of any county or municipality may by ordinance designate and approve one or more solid wastes disposal sites and facilities ... as its exclusive solid wastes disposal site and facility ... and thereafter each such site and facility shall be used by such county or municipality for the disposal of its solid wastes....

Although we disagree with the trial court's determination that plaintiffs lack standing, we agree that the claim was properly dismissed. *See Norwest Bank Lakewood v. GCC Partnership,* 886 P.2d 299 (Colo.App. 1994) (court may affirm on grounds different from those relied on by the trial court).

## A.

We agree with plaintiffs that the trial court erred in dismissing their claim contesting the validity of Resolution 294 for lack of standing based on a failure to exhaust their administrative remedies because they had not submitted a CD application.

■ Whether a party has standing requires a court to determine, based primarily on the allegations of the complaint, whether a plaintiff was injured in fact and whether the injury was to a legally protected interest. *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). The plaintiff must demonstrate that there is an existing legal controversy that can be effectively resolved and not a mere possibility of a future legal dispute.

■ Exhaustion of administrative remedies is not necessarily a prerequisite to establish standing when issues presented to the court depend on interpretation of legislation adopted by a governmental entity. *See Colorado–Ute Electric Ass'n v. Air Pollution Control Commission,* 648 P.2d 150 (Colo. App.1981), *vacated on other grounds,* 672 P.2d 993 (Colo.1983); *see also State of Colorado v. Veterans Administration,* 430 F.Supp. 551 (D.Colo.1977), *aff'd,* 602 F.2d 926 (10th Cir.), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980). A party adversely affected by a law that he or she contends is invalid need not violate the law in order to obtain a judgment on its validity or invalidity. *Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287 (1968).

■ To the extent plaintiffs seek a declaratory judgment, the injury-in-fact element of standing is established when the averments of the complaint, accepted as true, and the allegations, viewed in the light most favorable to plaintiff, as well as other submitted evidence, establish that the legislation threatened to cause injury to a plaintiff's present or imminent activities. *See CF & I Steel Corp. v. Colorado Air Pollution Control Commission,* 199 Colo. 270, 610 P.2d 85 (1980). Further, the injury must be to a legally protected interest—an interest emanating from a constitutional, statutory, or judicially created rule of law that entitles

plaintiff to some form of judicial relief. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc.,* 830 P.2d 1045 (Colo.1992).

In *Bowen/Edwards,* plaintiff contested the validity of new county regulations without first applying for a permit under those regulations. Nevertheless, the court determined that plaintiff made an adequate, if "less than formidable" showing that the regulations could impede its ability to develop and produce oil and gas in the county.

Here, plaintiffs contend that by adopting Resolution 294, the Board interfered with their ability to participate in the CD process, Colorado's exclusive process for licensing of a landfill.

■ While Resolution 294 does not, on its face, preclude application for a permit, the resolution can be read to preclude approval of any CD application that might be submitted. Consequently, while plaintiffs' showing also is "less than formidable," it too is adequate to withstand dismissal for lack of standing in a declaratory judgment action. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.*

## B.

We disagree, however, with plaintiffs' assertion that Resolution 294 necessarily violates the Sherman Antitrust Act, the Colorado Antitrust Act of 1992, and the Commerce Clause of the United States Constitution.

■ The Parker doctrine, which exempts state government from operation of the federal antitrust laws, extends to exempt local governments when engaged in their traditional government functions. The "state may sanction anticompetitive municipal activities and thereby immunize municipalities from antitrust liability," when the state policy is "clearly articulated and affirmatively expressed." *Community Communications Co. v. Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 840–41, 70 L.Ed.2d 810, 818–19 (1982); *cf. City of Colorado Springs v. Mountain View Electric Ass'n,* 925 P.2d 1378 (Colo.App.1995) (interpreting Colorado law prior to Colorado Antitrust Act of 1992). Moreover, any person exempt or immune under federal anti-

trust law is exempt from the Colorado Antitrust Act of 1992. *See* § 6–4–108(4), C.R.S. (1992 Repl.Vol. 2).

Consequently, to the extent that § 30–20–107 affirmatively authorizes the Board to designate an exclusive solid waste landfill site, Resolution 294 violates neither state nor federal antitrust statutes.

In their briefs on appeal, plaintiffs imply that Resolution 294 is intended to be used to prohibit the siting of any other landfill for disposal of non-county waste. And, we note that the legislative history of § 30–20–107 indicates that this provision authorizes government entities to "designate disposal sites to be used for dumping waste materials collected in the [jurisdiction]" in order to "provide a stable source of refuse to disposal sites under their respective jurisdictions." Legislative Council Report to the Colorado General Assembly, Research Publ. #129 at xxii and 42 (1967); *see also* Colo. Sess. Laws 1967, ch. 358, § 7 at 760. Thus, on its face, Resolution 294 is in accord with state policy, and the Board is immune from state and federal antitrust laws, but only to the extent that it establishes an exclusive site for disposal of county generated waste.

Plaintiffs' complaint, however, contains no allegation that the Board has applied the resolution to require that waste which is not collected within its jurisdiction be disposed of in its exclusive site. Thus, any such inference is purely speculative and, therefore, not subject to review as the claims are postured here. *See Farmers Insurance Exchange v. District Court,* 862 P.2d 944 (Colo.1993) (speculative inquiries inappropriate in declaratory judgment actions).

Similarly, we will not address plaintiffs' contention that Resolution 294 violates the Commerce Clause because this argument is brought for the first time on appeal. *See In re Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

Accordingly, the judgment of the trial court is affirmed.

BRIGGS and TAUBMAN, JJ., concur.